Levan JOHNSON, Sr., Appellant

v.

**PROGRESSIVE INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued July 22, 2009.
Filed Dec. 28, 2009.

William E. Averona, Philadelphia, for appellant.

Richard B. Morrison, Philadelphia, for appellee.

BEFORE: BOWES, PANELLA, and FITZGERALD *, JJ.

OPINION BY BOWES, J.:

¶ 1 On appeal, Levan Johnson, Sr. assails the propriety of the trial court's grant of summary judgment in favor of Progressive Insurance Company on Appellant's statutory bad faith insurance claim. We hereby affirm.

¶ 2 The following facts inform our decision herein. Appellant possessed automobile insurance issued by Appellee which included $100,000 in underinsured motorist ("UIM") benefits. On June 5, 2005, he was involved in an automobile accident when another vehicle rear-ended his car. Appellant did not require immediate medical treatment, but did present to the emergency room the following day complaining of knee and back pain.

¶ 3 On July 27, 2006, over one year after the accident, Appellant advised Appellee that he intended to pursue his UIM coverage under the aforementioned policy. Within days, on August 2, 2006, Appellee acknowledged the claim. On August 22, 2006, Appellant sought permission to settle the underlying tort action against the driver of the other car, and Appellee consented two days later.

¶ 4 On September 26, 2006, just one month after the tortfeasor's claim was settled, Appellee sought documentation supporting the extent and nature of the injuries that Appellant suffered in the June 5, 2005 accident. Specifically, Appellee requested information on Appellant's wages, medical records, and his five prior automobile accidents in order to ascertain whether Appellant's physical complaints were related to those prior accidents or the June 5, 2005 incident.

¶ 5 In response, on October 2, 2006, Appellant made a demand for arbitration, did not provide any of the information to Appellee, and then suggested that the request relating to the prior car accidents was made in bad faith. Appellee promptly retained counsel who immediately sent a letter asking to schedule Appellant's statement under oath. The statement was taken on October 26, 2006. However, Appellant did not provide Appellee with permission to review his medical records until November 2, 2006, and Appellee did not receive all of those records until March 2007.

_____

* Former Justice specially assigned to the Superior Court.

¶ 6 On September 27, 2006, Mark Avart, D.O. repaired Appellant's knee, which had been injured on June 5, 2005. That physician subsequently issued a report on November 7, 2006, opining that Appellant would suffer permanent impairment of that knee. Appellee received Dr. Avart's report on November 27, 2006, and also obtained Dr. Avart's post-operative report, which indicated that the surgery was successful. Dr. Avart's progress notes indicated that on November 2, 2006, Appellant was improving.

¶ 7 In light of the inconsistencies about Appellant's recovery from his knee injury, Appellee secured an independent medical examination from a board-certified orthopedic surgeon, John R. Duda. The physical examination of Appellant was conducted on February 20, 2007, and that same day, Dr. Duda issued a report. Therein, he opined that all of the injuries sustained by Appellee in the June 5, 2005 automobile accident had fully resolved, that the knee injuries suffered in the accident had been successfully repaired through surgery, and that any existing knee problems that Appellee was experiencing were unrelated to the car accident.

¶ 8 On February 16, 2007, Appellee agreed that the case could proceed to arbitration in front of Roger Gordon, as sole arbitrator. On April 23, 2007, Mr. Gordon scheduled the arbitration for May 14, 2007. Prior to arbitration, Appellant demanded the full amount of UIM coverage of $100,000; on May 10, 2007, Appellee offered $30,000. Appellant refused to lower his demand, and the case proceeded to arbitration. On May 18, 2007, Appellant was awarded $75,000, twenty-five percent less than his demand. On June 20, 2008, Appellant instituted this action against Appellee asserting claims for fraud, statutory bad faith under 42 Pa.C.S. § 8371, and negligence in the processing of his UIM claim. Appellee filed preliminary objections, which the trial court partially granted by dismissing counts one and three. Appellant's statutory bad faith was the sole surviving cause of action. Appellee filed a motion for summary judgment following the completion of discovery.

¶ 9 After review, the trial court concluded that there was no genuine issue of material fact that Appellee had not exhibited bad faith in processing Appellee's UIM claim, and it entered summary judgment in favor of Appellee. This appeal followed. An appellate court's scope of review of an order granting summary judgment is plenary. *Stimmler v. Chestnut Hill Hospital,* —— Pa. ——, 981 A.2d 145 (2009). Our standard of review is as follows:

[T]he trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment.

*Id.* at 153–54 (quoting *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218, 1221–22 (2002)).

¶ 10 Common law does not provide for a bad faith cause of action against an insurance company, but § 8371, actions on insurance policies, creates a statutory remedy for such conduct. It states:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the in-

sured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

¶ 11 While the statute itself does not include a definition of bad faith, this Court has had occasion to interpret that term. In *Condio v. Erie Insurance Exchange*, 899 A.2d 1136, 1142 (Pa.Super.2006), we observed that bad faith is present if "the insurer did not have a reasonable basis for denying benefits under the policy and ... the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.* (quoting *O'Donnell v. Allstate Insurance Co.*, 734 A.2d 901, 906 (Pa.Super.1999)). "Bad faith conduct also includes 'lack of good faith investigation into facts, and failure to communicate with the claimant.'" *Condio, supra* at 1142 (quoting in part *Romano v. Nationwide Mutual Fire Insurance Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1232 (1994)). Bad faith must be established by clear and convincing evidence. *Condio, supra.*

¶ 12 As we noted in *Condio*, bad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages. Negligence or bad judgment will not support a bad faith cause of action. *Id.* Rather, the insured must demonstrate that the insurer "breached its duty of good faith through some motive of self-interest or ill-will." *Id.* at 1143 (quoting *Brown v. Progressive Insurance Co.*, 860 A.2d 493, 501 (Pa.Super.2004)). Direct dealings by the insurance company with its insured, rather than a third party, during the processing of an insurance claim does not vest it with a heightened duty of care. *Condio, supra.* In *Condio*, we found that the insurer did not act in bad faith when it denied a UIM claim to its insured because it had a good faith basis for concluding that its insured was not the driver of the vehicle when the accident occurred, and thus, its policy did not apply to the accident in question.

¶ 13 On the other hand, in *Hollock v. Erie Insurance Exchange*, 842 A.2d 409 (Pa.Super.2004) (*en banc*), upon which Appellant heavily relies, we upheld a trial court's conclusion that the insurer had operated in bad faith. In that case, documented proof existed that the insurer had affirmatively misrepresented the amount of coverage at issue, refused to accept valid causation evidence without any foundation, was dilatory, and forced the insured to arbitrate by making a low offer of settlement that did not bear a reasonable relationship to the insured's damages. The arbitration award was almost twenty-nine times that offer.

¶ 14 Herein, Appellee committed none of the above instances of misconduct which may be reflective of bad faith. Appellee performed a good faith investigation into the facts by timely seeking medical records, wage statements, and Appellant's statement under oath, and by obtaining an independent medical examination. The request for a physical examination from Dr. Duda was reasonable because Dr. Avart's November 7, 2006 report was contradicted by notations in medical records indicating that the surgery was successful and Appellant was improving. Appellee ultimately made an offer that was slightly less than fifty percent of the eventual award. It also promptly communicated with the claimant. In addition, Appellee made no

misrepresentations to Appellant and did not act in a dilatory manner in proceeding with the arbitration.

¶ 15 Appellee never denied benefits; rather, the dispute centered upon the measure of damages. Meanwhile, Appellee had a reasonable basis for the value that it placed on Appellant's damages. Having obtained an independent medical examination of Appellant, an expert witness report indicated that the injuries from the June 5, 2005 accident were resolved and that any residual injuries were the result of a pre-existing condition. Appellee did not ignore uncontroverted evidence of loss. It made a more than reasonable estimate of the damages suffered by Appellant in this accident by offering Appellant $30,000, which would have resulted in a total recovery of $55,000. This offer happened to be lower than the eventual award. However, we specifically noted in *Condio* that bad faith is not present when an insurer makes a low but reasonable estimate of an insured's damages.

¶ 16 Appellant implies that Appellee's offer of $30,000 was in bad faith because Appellee's reserve was higher than its offer. However, Appellant refused to lower his $100,000 demand after the offer and thereby prompted a stalemate in the settlement negotiations. The award was actually lower than Appellant's demand and represented a middle ground between the offer and the demand. It certainly bore no resemblance to the award made in *Hollock*, which was twenty-nine times higher than the insurer's offer.

¶ 17 There is no question that this case was handled promptly and professionally by Appellee. Appellant asserted his UIM claim on July 27, 2006, and asked to settle with the tortfeasor on August 22, 2006. Appellee promptly assented to that request and then sought documentation supporting the extent of Appellant's injuries one month later. When Appellant refused to provide the requested materials and demanded arbitration, Appellee retained a lawyer and the parties scheduled Appellant's statement under oath for October 26, 2006. Appellee could not obtain any medical records until after November 2, 2006, when Appellant signed a release. It scheduled an independent medical examination for February 20, 2007. By February 16, 2007, Appellee had agreed upon a single arbitrator. This consent to Mr. Gordon as arbitrator occurred four and one-half months after the arbitration demand and a mere three and one-half months after Appellant's statement under oath and release of his medical records. The arbitration occurred less than nine months after the demand for arbitration.

¶ 18 The underlying facts involve nothing more than a normal dispute between an insured and insurer over the value of an UIM claim. The scenario under consideration occurs routinely in the processing of an insurance claim. To permit this action to proceed under these facts would invite a floodgate of litigation any time an arbitration award is more than an insurer's offer to settle, even though the award is substantially below the insured's demand. Any finding that Appellee operated in bad faith is unfounded. Thus, there is no genuine issue of material fact that Appellee did not display bad faith either in the processing of the underlying UIM claim or in defending the action at issue herein. We therefore affirm the trial court's decision to grant summary judgment in favor of Appellee.

¶ 19 Order affirmed.