**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1196
_____

BARRY SHAFFER;
KIMBERLY SHAFFER,
Appellants

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 1-13-cv-01837)
District Judge: Honorable Sylvia H. Rambo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 3, 2015

Before: MCKEE, *Chief Judge*, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: March 10, 2016)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellants Barry and Kimberly Shaffer (the "Shaffers") appeal the District Court's summary judgment ruling in favor of Appellee State Farm Mutual Automobile Insurance Company on their claim that State Farm acted in "bad faith" in handling their claim for benefits made pursuant to an underinsured motorist policy. Because we agree with the District Court that, viewing the record in the light most favorable to the Shaffers, no reasonable fact finder could conclude that there is "clear and convincing" evidence that the insurer acted in bad faith, we will affirm its judgment in favor of State Farm.

I

The Shaffers were covered by an automobile policy with State Farm that provided for medical payments and "stacked" underinsured motorist ("UIM") coverage up to $200,000. On September 5, 2008, Barry Shaffer was involved in a head-on collision automobile accident. The other driver, Tina Kresge, was primarily at fault. As a result of the accident, Barry Shaffer sustained multiple injuries to his neck, back, eyes, and knees. At the time of the accident, Barry Shaffer was receiving social security and military disability benefits for a number of physical ailments.

The Shaffers notified State Farm of the accident and initiated a claim for medical payment benefits. Although State Farm initially had difficulty obtaining Barry Shaffer's medical information and bills, it paid all medical bills that were submitted in relation to the accident without engaging a consulting physician to review whether the services were attributable to conditions caused by the accident.

State Farm's payments under the claim included payment for a lower back surgery. Barry Shaffer's treatment record from September 13, 2010 indicated that his back surgery had been successful and State Farm closed its medical payment claim in December of 2010.

On April 6, 2011, the Shaffers requested that State Farm assign a UIM adjuster and advised that they were discussing settlement with Kresge regarding the accident. The Shaffers, through their attorney, requested that State Farm consent to a possible settlement, which State Farm did, and the Shaffers settled with Kresge for $72,500, well below Kresge's liability limit of $100,000.

Following the settlement, the Shaffers demanded $250,000 from State Farm under the UIM policy. As Barry Shaffer had been on disability for conditions preceding the accident, including lower back and knee problems, State Farm requested access to his complete medical records. After obtaining some medical records from the Shaffers, State Farm requested additional records over the ensuing months from various medical providers. In addition, State Farm enlisted a professional medical record procurement company to ensure that it had a complete medical file before making a claim valuation.

After receiving a vocational report from the Shaffers on January 27, 2012, State Farm retained counsel to help manage the claim and made additional efforts to obtain medical records that preceded the accident. State Farm also obtained a statement under oath from Barry Shaffer on June 12, 2012.

State Farm ultimately had Barry Shaffer's entire medical file reviewed by a consulting orthopedic surgeon on April 29, 2013. In accordance with the reviewing surgeon's report, State Farm determined that only a portion of Barry Shaffer's medical treatment was due to the accident, and that the rest was attributable to his preexisting conditions. After receiving its expert's report, State Farm set a reserve range of $0 to $40,000, and offered a settlement of $10,000, which the Shaffers refused.

The Shaffers retained an expert on insurance claim processing practices. The expert found that State Farm failed to abide by industry standards in managing the UIM claim.

On May 31, 2013, the Shaffers filed an action in the Court of Common Pleas for Dauphin County, asserting causes of action against State Farm for breach of the UIM policy and bad faith under 42 Pa. C.S.A. § 8371. State Farm removed the case to federal court on the basis of diversity jurisdiction. Following discovery, State Farm moved for summary judgment on the bad faith claim, which the District Court granted in its favor on October 20, 2014. The breach of contract claim proceeded to trial, and the jury awarded the Shaffers $250,000.[1] The Shaffers now appeal the summary judgment ruling in favor of State Farm on the issue of bad faith.

II

---

[1] After molding the verdict to account for Kresge's policy limit of $100,000 and payments previously made by State Farm, judgment was entered in favor of the Shaffers on February 18, 2015 in the amount of $142,651.22.

4

The District Court had jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291. We engage in plenary review over a grant of summary judgment and use the same standard as the district court: "whether there are genuine issues of material fact precluding entry of summary judgment." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009) (citations omitted). Under Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Although the moving party bears the initial burden of proof, the nonmoving party cannot merely rely on the pleadings and must have provided a factual basis for claims with specific evidence from the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

III

The Shaffers' bad faith claim is based upon 42 Pa. C.S.A. § 8371, which provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>      (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>      (2) Award punitive damages against the insurer.
>      (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.

5

A plaintiff may prevail on a claim of bad faith under § 8371 by presenting "clear and convincing" evidence that the defendant insurance company "did not have a reasonable basis for denying benefits under the policy and that [the] defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citations omitted). The standard requires that the plaintiff show "the evidence is so clear, direct, weighty[,] and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant[] acted in bad faith." *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (citations omitted).

A claim for bad faith may be premised on an insurer's bad faith in investigating a claim, such as by failing to conduct a good faith investigation into the facts or failing to communicate with the claimant. *See Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. Ct. 2009). Although a delay between a demand for benefits and an insurer's determination of whether to pay a claim is relevant, delay "does not, on its own, necessarily constitute bad faith." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 589 (E.D. Pa. 1999). Rather than focusing solely on delay, courts have looked "to the degree to which a defendant insurer *knew* that it had no basis to deny the claim[]." *Id.* "[I]f delay is attributable to the need to investigate further or even to simple negligence," bad faith has not been shown. *Id.* (citations omitted).

The Shaffers' claim rests primarily upon State Farm's delay in investigating and evaluating the UIM claim. State Farm explained its delay by pointing to Barry Shaffer's

6

extensive history of relevant medical ailments prior to the accident.  The Shaffers do not

present any evidence to support their assertions that State Farm's insistence on obtaining

a complete medical file was undertaken purposefully to delay resolution of the claim.

Nor can it be inferred that State Farm retained a consulting physician to review the claim

as a pretext to deny the claim without reasonable foundation.  Although State Farm's

claims management may have been flawed, the Shaffers fail to present evidence that

State Farm's delay or intentions were anything other than what it claimed: an attempt to

further investigate Barry Shaffer's medical history to determine the value of the UIM

claim.

The Shaffers argue on appeal that the fact that they later received a substantial jury

verdict that necessarily discredited State Farm's medical expert supports a conclusion

that State Farm acted in bad faith.  A jury's later determination regarding the credibility

of State Farm's medical review does not affect the reasonableness of State Farm's earlier

reliance on that review.  Similarly, the fact that State Farm's settlement offer was much

lower than the amount the jury ultimately awarded would not necessarily affect the

reasonableness of State Farm's reliance on the review in making that offer.

The Shaffers also contend that State Farm should have initiated a UIM claim on

their behalf after the accident and that its failure to do so demonstrated bad faith.  It is

undisputed, however, that as late as June 2010, the Shaffers' own counsel was unsure

whether a UIM claim would be needed.  At that point, the Shaffers' attorney specifically

advised State Farm that he would notify it if a UIM claim became necessary.  Under

these circumstances, it was not unreasonable for State Farm to delay opening a UIM claim until after being notified by the Shaffers' attorney that such a claim would be pursued.

The Shaffers further claim that State Farm acted in bad faith by questioning the causal relationship of Barry Shaffer's medical conditions to the motor vehicle accident even though it did not do so in paying all medical expenses after the accident. The Shaffers admit that inconsistency between how the claims were handled is not sufficient to show bad faith, but contend that they should have been able to use the medical payment claim file and adjuster's notes as evidence that State Farm acknowledged the accident caused Barry Shaffer's injuries. State Farm did not dispute that Barry Shaffer suffered significant injuries as a result of the accident. Its consulting physician review in the UIM claim was intended to determine *how much* of his injuries were due to the accident and how much were due to his preexisting conditions. The fact that State Farm chose not to conduct such a review in processing claims for the payment of medical expenses does not provide evidence that all of Barry Shaffer's treatment was, in fact, due to the accident and would not call into question its decision to conduct such an investigation and review with respect to the UIM claim.

The Shaffers' argument that State Farm's bad faith was evidenced by its assertion in the UIM case that Barry Shaffer was partially responsible for the accident is also meritless. The Shaffers have not provided evidence that State Farm considered this defense in a frivolous attempt to limit its liability for UIM benefits.

8

As a final note, the Shaffers argue that the District Court erred in ignoring their insurance expert's report regarding the issue of bad faith. The District Court, however, has considerable discretion to accept or reject an expert's conclusions on the question of bad faith. *See Scott v. Geico Gen. Ins. Co.*, No. 3:11-1790, 2013 WL 6055221, at *3 (M.D. Pa. Nov. 15, 2013) (citing *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 844 (3d Cir. 1981)). Here, the expert review provides a legal conclusion without adding any additional facts, and so provides no factual evidence to support a claim of bad faith.

IV

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of State Farm on the issue of bad faith.