J-A02037-19

2019 PA Super 279

| | | |
|---|---|---|
| KARDEN CONSTRUCTION SERVICES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 286 MDA 2018 |
| BRIAN D'AMICO | : | |

Appeal from the Judgment Entered April 4, 2018
In the Court of Common Pleas of Berks County Civil Division at No(s):
09-6787

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

OPINION BY NICHOLS, J.: **FILED SEPTEMBER 13, 2019**

Appellant Karden Construction Services, Inc. appeals from the judgment entered in favor of Appellee Brian D'Amico following a new trial on damages from Appellant's claim of unjust enrichment. Appellant argues that the trial court erred in finding that Appellant failed to prove damages. We affirm.

This Court previously summarized the background of this appeal as follows:

> On June 2, 2009, [Appellant] filed a complaint against Appellee, alleging breach of contract and, alternatively, unjust enrichment. [Appellant] alleged that, on January 4, 2007, [Appellee] entered into an oral agreement with [Appellant] for the provision of professional services to assist with litigation and construction management. Specifically, [Appellant] alleged that [Appellee] engaged [Appellant] as an expert to assist [Appellee] in a lawsuit [Appellee] had filed against a contractor and a home inspector in connection with the construction of [Appellee]'s new home. [Appellant] further alleged that it rendered approximately one hundred thirteen (113) hours of professional services to [Appellee] from January 4, 2007 until December 8, 2008, valued at $21,338.70 when combined with out-of-pocket expenses.

[Appellant] alleged that [Appellee] failed to pay [Appellant] for the professional services and, as a result, breached the oral agreement. Alternatively, [Appellant] alleged that [Appellee] unjustly enriched himself by retaining the benefits of the services provided to him.

This matter proceeded to a non-jury trial, at which both parties presented testimony. The trial court summarized the evidence as follows:

> Dennis Link has been the president and sole employee of [Appellant] since 1999. [Appellant] is a corporation that provides construction representation, including consulting, and project management representation throughout the construction of buildings, and expert reports and testimony for arbitrations and court hearings. [Mr. Link] works for owners, contractors, and counsel. His projects include commercial, industrial, institutional, governmental, and residential construction.
>
> [Appellant] was originally hired by [Appellee's] former law firm for its lawsuit against a contractor. Mr. Link testified that he first met [Appellee] in January 2007 at [Appellee's] home. Osmer Deming, Esquire, gave the necessary contact information to both parties. [Appellee] needed [Appellant's] services for a new home which he was building. The meeting took several hours, and afterwards Mr. Link went to the job site. Mr. Link testified that during the meeting he had discussed his costs as an expert witness. He had said that the expenses would probably be $15,000.00 or possibly $20,000.00.
>
> Mr. Link further testified that his contracts are typically verbal because the clients can hire or fire him at any time. In the instant case, he did a site assessment to determine what was done and if [the construction] was in conformance with codes. He gave the information to [Appellee's] former attorneys to prepare a complaint against [Appellee's] contractor and home inspector and to execute a certificate of merit. Mr. Link also stated that he communicated regularly with [Appellee] via e-mails and telephone conversations. Mr. Link claimed that his work for [Appellee] evolved into a considerable amount of construction management. [Appellee] also asked him about designs.

By letter dated July 25, 2008 . . ., [Appellant] attached a [$3,000.00] retainer invoice with the fee schedule discussed between the parties in January 2007. Mr. Link testified that he had sent this letter because he had been informed by [Appellee's] law firm that [Appellee] had not been paying it for its services to [Appellee]. There is no place on the letter for [Appellee] to sign and return it to [Appellant]. The first page of the letter states: "Note: A retainer is required on every engagement. The retainer is applied to the final billing and any balance is returned at the conclusion of the engagement." [Appellant] did not receive any payments from [Appellee] after the letter had been sent to him.

In January 2009 or February 2009, at the conclusion of its services, [Appellant] sent its first invoice to [Appellee]. Mr. Link testified that he usually does not receive any payment until there is a negotiated settlement or a trial verdict. He normally expects to be paid from the settlement. He does not usually bill clients unless they request bills because he does not want them to be forced to accept an undesirable settlement in order to pay [Appellant's] bill. [Appellee's] case is still pending. Mr. Link does not think [Appellee] terminated his services officially, but, at some point, [Appellee] stopped asking [Appellant] to work for him.

[Attorney Deming] is [Appellee's] present attorney for his construction litigation. He had been an associate at the law firm which initiated [Appellee's] lawsuit. He started his own practice, and [Appellee] is now his client. Attorney Deming testified that there had been no agreement by his former law firm to pay [Appellant] for his work for [Appellee]. He did not remember getting any bill from [Appellant].

[Appellee] testified that his attorneys at the law firm, Kevin Moore, Esquire, and Eden Bucher, Esquire, facilitated the meeting between him and Mr. Link. He did not know anything about Mr. Link before the meeting. When he had received the invoice, he had not believed that he had owed [Appellant] any money because he had not entered into a written or verbal contract with [Appellant]. It was his understanding that Mr. Moore and Ms. Bucher were paying [Appellant].

[Appellee] further testified that no meeting between Mr. Link and him had ever occurred at his residence. He first

met Mr. Link at the law firm. There had been no discussion regarding [Appellee's] payment or a request for a retainer at that meeting. Following the first meeting, it had been [Appellee's] understanding that Mr. Link would offer support as an expert witness for the purpose of the litigation against [Appellee's] contractor and the inspector. Mr. Moore, Ms. Bucher, and Mr. Deming instructed [Appellee] to work with [Mr. Link] so he could help in the litigation concerning the house construction.

Upon receipt of the letter of February 5, 2009, [Appellee] sent an e-mail to [Appellant] stating that it was his understanding that [Appellant] was being paid by the law firm and, at the current time, [Appellee] did not wish to hire [Appellant] personally. Mr. Moore and Ms. Bucher had told [Appellee] that [Appellant] had been on retainer. Mr. Link had met with the two attorneys and had talked to them by telephone about three or four times prior to [Appellee's] first meeting with Mr. Link. The litigation against the contractor and home inspector is still pending.

*Karden Const. Servs., Inc. v. D'Amico*, 1351 MDA 2015 at 1-2 (Pa. Super. filed May 25, 2016) (unpublished mem.) (citation omitted).

Following a non-jury trial, the trial court found in favor of Appellee on all counts and denied Appellant's post-trial motions for judgment notwithstanding the verdict. *Id.* at 4. On appeal, a prior panel of this Court affirmed in part, reversed in part, and remanded this matter. *Id.* at 10.

Of relevance to this appeal, the prior panel concluded that Appellee was unjustly enriched by Appellant's construction services. *Id.* at 9-10. As to the provision of construction services, the prior panel focused on Mr. Link's testimony that Appellant provided Appellee with the following construction services:

Frequently, [Appellee] would ask me questions about designs that were done, whether they were appropriate or not, whether there

- 4 -

was alternatives to it. Early—when—because it's problems with the builder. We discussed going out and getting additional estimates so that we had support for damages that were going to go into the—into the legal process. And so a lot of activity associated with construction management was involved.

*Id.* at 9 (record citation omitted). Additionally, the prior panel emphasized Mr. Link's testimony that once Appellee filed a complaint, he continued to communicate with Appellee "both from the standpoint—a local standpoint, dispute resolution standpoint, and also standpoint of construction management." *Id.* at 10 (record citation omitted).

The prior panel concluded that Appellant was entitled to judgment notwithstanding the verdict on its claim for unjust enrichment for Appellant's "expertise in managing the construction of [Appellee]'s dwelling."[1] *Id.* at 10. The panel remanded for a determination of the reasonable value of the construction management services, as opposed to the litigation services, Appellant provided to Appellee. *Id.* at 10. Specifically, the panel concluded:

Given the uncontradicted evidence, [Appellee] clearly appreciated, accepted and retained the benefit of [Appellant]'s expertise in managing the construction of [Appellee]'s dwelling. Differently put, [Appellee] unjustly enriched himself from the provision of construction management services. As a result, we remand this matter to the trial court to determine the reasonable value of [Appellant]'s construction management services. Accordingly, we affirm the trial court's judgment to the extent it held that no agreement existed between the parties and [Appellee] did not benefit from the litigation support services. We,

---

[1] The prior panel distinguished Appellant's provision of "litigation services" noting that Appellant failed to establish Appellee benefitted from such services and because "the lawsuit for which [Appellee's] former law firm engaged the expert service of [Appellant was] still pending." *Karden Const. Servs., Inc.*, 1351 MDA 2015 at 9 & n.2.

> however, reverse the trial court's judgment to the extent it held that [Appellee] was not unjustly enriched from the provision of construction management services and remand this matter for determination of the reasonable value of such services.

*Id.* at 10. The prior panel further suggested that the parties and the trial court would need to analyze Appellant's Exhibit 2 (Exhibit P-2), which "detail[ed] services performed by [Appellant] both in the context of litigation support and construction management." *Id.* at 10 n.3.

On remand, the trial court conducted a new trial limited to the issue of damages.[2] At the new trial, Mr. Link testified. Through Mr. Link, Appellant's counsel admitted into evidence Exhibit 4 (Exhibit P-4), which Mr. Link prepared in anticipation of the new damages trial. Testifying about Exhibit P-4, Mr. Link asserted that he spent a total of 113.27 hours on Appellee's project, of which 99.57 hours were for construction management services. Mr. Link valued the construction management services at $17,343.30.

Appellee also testified at the new trial. Appellee asserted that Appellant provided no construction management services and that he used none of Appellant's services when finishing the construction of his home.

At the conclusion of testimony, the parties requested an opportunity to file proposed findings of fact and conclusions of law, which the trial court granted. Appellant did not move for a directed verdict.

---

[2] The initial trial in this matter was heard by Judge Jeffrey K. Sprecher. Judge Sprecher recused himself after this Court remanded the case for further proceedings. Judge James M. Lillis presided over the new trial following remand.

On January 9, 2018, the trial court issued its decision finding against Appellant and awarding zero damages. Appellant filed post-trial motions on January 17, 2018, seeking judgment notwithstanding the verdict, which the trial court denied on February 6, 2018.

Appellant filed a notice of appeal on February 8, 2018, and complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement. On March 29, 2018, Appellant filed a *praecipe* for judgment, and the Prothonotary of the Court of Common Pleas entered judgment on April 4, 2018.[3] The trial court filed a Rule 1925(a) opinion on May 17, 2018.

In its Rule 1925(a) opinion, the trial court concluded that Appellant failed to demonstrate damages associated with its claim of unjust enrichment for construction management services. Trial Ct. Op., 5/17/18, at 6. The trial court reviewed the evidence presented at the first trial, which was incorporated into the record in the second trial, as well as the evidence presented in the second trial. *See id.* at 2-5. The trial court refused to afford any weight to Mr. Link's testimony, or Exhibit P-4, regarding the purposes of his engagement with Appellee and the time spent on construction management. *See id.* at 2 (concluding that "[u]nfortunately, [Appellant] failed to provide any reliable evidence as to which services were provided for construction purposes and which were performed primarily for purposes of

_____

[3] Although Appellant filed its appeal before the entry of the judgment, a formal judgment was entered on Appellant's *praecipe* for entry of judgment. Therefore, we will not quash this appeal. *See Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 862 (Pa. Super. 2017).

litigation"). Specifically, the trial court noted that Appellant's assertion that only 13.70 hours were for litigation services was belied by his prior testimony that he initially was hired to provide litigation services. *Id.* at 3-5. The trial court further noted that Appellee testified at the new trial that Appellant did not provide any services related to finishing or improving his home. *Id.*

The trial court concluded that Appellant's evidence at the new trial was a self-serving attempt to recast the majority of the services he provided as construction services. *See id.* at 5. Moreover, the trial court concluded that Appellant failed to demonstrate that any of the construction services he provided resulted in a benefit to Appellee.[4] *Id.*

On appeal, Appellant presents the following questions:

1. Did the trial court err in returning a verdict in favor of . . . Appellee as the credible evidence of record presented at trial, specifically the testimony and the written exhibits submitted into evidence by the Appellant was sufficient to establish that the reasonable value of the construction management services provided by [Appellant] to [Appellee] was in the amount of $17,343.30 plus costs of $739.87?

2. Did the trial court err in returning a verdict in favor of . . . Appellee as the trial court's finding that "[Appellant] failed to sustain its burden of proof to establish the value attributable to any construction management services provided by [Appellant] as

---

[4] We acknowledge that a party must move for a directed verdict in order to preserve a claim that it was entitled to judgment notwithstanding the verdict in a post-trial motion. However, this Court has declined to find waiver when a party presents a request for judgment notwithstanding the verdict in a post-trial motion, and the trial court denies the post-trial motion on its merits. *See Capital Care Corp. v. Hunt*, 847 A.2d 75, 84 n.4 (Pa. Super. 2004). Here, the trial court denied Appellant's post-trial motion for judgment notwithstanding the verdict and explained, in its Rule 1925(a) opinion, that it did so on the merits. Therefore, we decline to find waiver. *See id.*

may have benefitted or enriched [Appellee] to any appreciable or measurable degree" ignored the language of the Opinion and Order of the Superior Court of May 25, 2016, which specified that . . . Appellee had in fact been unjustly enriched from . . . Appellant's provision of construction management services and that the [trial c]ourt was to analyze the exhibit submitted into evidence during the non-jury trial on June 30, 2015, to determine the reasonable value of said construction management services thus clearly confirming there was value to said services?

Appellant's Brief at 9.

We summarize Appellant's arguments together, although in a different order than presented in its brief. Appellant contends that the trial court's determination was inconsistent with this Court's prior remand order, which held that Appellee was unjustly enriched by the provision of construction services. *Id.* at 19-21. Appellant contends that the trial court ignored the prior panel's determination that Appellee was unjustly enriched by suggesting that Appellant failed to establish that he conferred a specific benefit related to construction management services for Appellee's home. *Id.* at 20-21.

Appellant also claims that it provided credible and unrefuted evidence that Appellee was unjustly enriched by receiving construction services. Specifically, Appellant contends that it presented Exhibit P-4, which showed "the breakdown between services provided for construction management and services provided for litigation." *Id.* at 13.

Appellant further contends that the trial court erred in affording Exhibit P-4 no weight. Appellant criticizes the trial court for finding inconsistencies between Mr. Link's prior testimony and his testimony at the new trial. *Id.* at 15-18. Appellant contends that Mr. Link consistently testified that he

- 9 -

expended substantial time on construction management, which was not inconsistent with his testimony at the new trial or the substance of Exhibit P-4. Moreover, Appellant asserts that Mr. Link's evidence regarding the time spent on various services Appellant provided stood unrebutted. *Id.* Appellant concludes that it is entitled to a reversal of the trial court's decision and the entry of a judgment in its favor.[5]

> Our review is governed by the following well-settled principles:
>
> [a] judgment notwithstanding the verdict can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [trial] court could have properly made its award, then we must affirm the trial court's denial of the motion for judgment notwithstanding the verdict. A judgment notwithstanding the verdict should be entered only in a clear case.

*Prieto Corp. v. Gambone Const. Co.*, 100 A.3d 602, 609 (Pa. Super. 2014) (citation and internal alterations omitted).

---

[5] We note that Appellant did not seek a new trial in its post-trial motion. Additionally, Appellant does not argue that any of the specific construction management services listed in Exhibit 4 provided a benefit to Appellee.

Moreover,

[t]he factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Brown v. Trinidad*, 111 A.3d 765, 770 (Pa. Super. 2015) (citations and quotation marks omitted).

The Pennsylvania Supreme Court has recently reiterated that a judgment notwithstanding the verdict

should only be entered in a clear case with any doubts resolved in favor of the verdict winner. An appellate court "stands on a different plane" than a trial court, and it is the trial court that has the benefit of an "on-the-scene evaluation of the evidence." As such, while the appellate court may disagree with a verdict, it may not grant a motion for [judgment notwithstanding the verdict] simply because it would have come to a different conclusion. Indeed, the verdict must stand unless there is no legal basis for it.

*Menkowitz v. Peerless Publications, Inc.*, 211 A.3d 797, 804 (Pa. 2019).

The prior panel of this Court stated the law to be applied on remand as follows:

[u]njust enrichment is an equitable doctrine, whose elements we have described as "[(1)] benefits conferred on defendant by plaintiff, [(2)] appreciation of such benefits by defendant, and [(3)] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995) . . . . The critical inquiry

- 11 -

in the application of this doctrine is whether a defendant has been unjustly enriched. *Id.* "Where unjust enrichment is found, the law implies a contract, referred to as either a *quasi contract* or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred."

*Karden Const. Servs., Inc.*, 1351 MDA 2015 at 7. In assessing damages for unjust enrichment, however, "[e]nrichment is 'measured by the value of the benefit to the owner, not by the value of the invoice submitted by the subcontractor.'" *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 283 (Pa. Super. 2010) (citations and footnote omitted); *see also D.A. Hill Co. v. Clevetrust Realty Inv'rs*, 573 A.2d 1005, 1010 (Pa. 1990) (reiterating that damages for unjust enrichment required consideration of "the value of the benefit conferred").

Having reviewed the evidence in the light most favorable to the verdict winner, we find that substantial evidence supported the trial court's determination that Mr. Link failed to demonstrate damages for construction management services as was contemplated by the prior panel. *See Karden Const. Servs., Inc.*, 1351 MDA 2015 at 10 (discussing Appellee's retention of the benefits of Appellant's expertise in managing the construction of Appellee's dwelling). The trial court noted that Mr. Link testified at the new trial that he performed several construction management services. *See* Trial Ct. Op. at 3; N.T., 8/8/17, at 10. However, there were discrepancies in Mr. Link's testimony. *See* Trial Ct. Op. at 3-5. As the trial court discussed, Mr. Link previously conceded that he initially intended to perform litigation services. *See* N.T., 6/30/15, at 9 (indicating that Mr. Link's initial objective

- 12 -

was to provide Appellee's counsel with the kinds of information they needed to prepare a complaint); *see also* N.T., 8/8/17, at 14 (noting that Mr. Link's litigation support included providing information relative to defects that he learned about during construction management). Therefore, we discern no basis to disturb the trial court's determination. *See Menkowitz*, 211 A.3d at 804.

Furthermore, as to Appellant's claim that it provided unrefuted testimony as to damages for construction management services, our review of the record reveals no basis for this Court to intrude on the trial court's credibility determinations. *See Prieto Corp.*, 100 A.3d at 609. The trial court was entitled to reject all, part, or none of the evidence presented, and the record supported the trial court's determination that Mr. Link's testimony was inconsistent. *See Brown*, 111 A.3d at 770. Therefore, the trial court did not abuse its discretion when rejecting all of Appellant's evidence at the new trial based on a credibility determination. *See id.*

In sum, having reviewed the record in light of our standard of review, we have no basis to conclude that Appellant was entitled to judgment as a matter of law. *See Menkowitz*, 211 A.3d at 804; *Prieto Corp.*, 100 A.3d at 609. Accordingly, no relief is due.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2019