J-A14038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| PYRAMID PHILADELPHIA MANAGEMENT, LLC, BY AND THROUGH ITS ASSIGNEE OLD REPUBLIC INSURANCE GROUP | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>:<br>:<br>:<br>: |
| v. | :<br>:<br>: |
| GALLAGHER BASSETT SERVICES, INC.<br>_____ | :<br>:<br>: |
| OLD REPUBLIC INSURANCE COMPANY AS ASSIGNEE OF PYRAMID PHILADELPHIA MANAGEMENT, LLC AND OLD REPUBLIC INSURANCE COMPANY IN ITS OWN RIGHT | :<br>:<br>:<br>:<br>:<br>:<br>: |
| v. | :<br>:<br>: |
| WILLIAM E. MALONE AND MUAI, MALONE, DAUBENBERGER, LLP | :<br>:<br>:<br>:<br>: |
| APPEAL OF: PYRAMID PHILADELPHIA MANAGEMENT, LLC, BY AND THROUGH ITS ASSIGNEE OLD REPUBLIC GROUP | :<br>:<br>: No. 698 EDA 2023 |

Appeal from the Order Entered February 13, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190803121,
191200733

| | |
|---|---|
| PYRAMID PHILADELPHIA MANAGEMENT, LLC, BY AND THROUGH ITS ASSIGNEE OLD REPUBLIC INSURANCE GROUP | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>:<br>: |
| v. | :<br>: |

GALLAGHER BASSETT SERVICES, INC.   :
  :
_____   :
OLD REPUBLIC INSURANCE COMPANY   :
AS ASSIGNEE OF PYRAMID   :
PHILADELPHIA MANAGEMENT, LLC   :
AND OLD REPUBLIC INSURANCE   :
COMPANY IN ITS OWN RIGHT   :
  :
     v.   :
  :
  :
WILLIAM E. MALONE AND MUAI,   :
MALONE, DAUBENBERGER, LLP   :
  :
  :
APPEAL OF: PYRAMID PHILADELPHIA   :
MANAGEMENT, LLC, BY AND   :
THROUGH ITS ASSIGNEE OLD   :   No. 700 EDA 2023
REPUBLIC GROUP

Appeal from the Order Entered February 24, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190803121,
191200733

BEFORE:  LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY LANE, J.:           **FILED AUGUST 1, 2024**

Pyramid Philadelphia Management, LLC ("Pyramid"), by and through its assignee, Old Republic Insurance Group ("ORIC"), and ORIC, in its own right and as assignee of Pyramid, appeal from the orders granting summary judgment in favor of Gallagher Bassett Services, Inc. ("GBS"), William E. Malone, Esquire, and Musi, Malone, Daubenberger, LLP (collectively, "Malone"), and dismissing all claims against GBS and Malone with prejudice.  We affirm.

These consolidated appeals, concerning claims for breach of contract and legal malpractice, derive from the claims handling by GBS and the legal

- 2 -

representation provided by Malone in relation to a worker's compensation claim filed against Pyramid by Alexandre Linnik ("Linnik"). The operative facts pertinent to these appeals are as follows.

ORIC is an insurance company which provides coverage to employers for workers' compensation claims. To assist with the discharge of its coverage obligations, ORIC contracted with GBS through a Master Claims Service Contract ("Contract"). The Contract required GBS to act as a third-party administrator ("TPA") to adjust workers' compensation claims filed against certain of ORIC's insureds.[1] In return, ORIC agreed to "pay [GBS] the claims fees negotiated with 'Insured.'" Contract, 3/19/14, at 8. ORIC and GBS are the only parties to the Contract. Moreover, the Contract specifically provided, "[t]his Contract is for the sole benefit of the parties hereto and in no event shall Contract be constructed to be for the benefit of any third party and neither ORIC nor [GBS] shall be liable for any loss, liability[,] damages[,] or expense to any person not a party to this Contract." *Id*. at 10. The Contract further provided that "[n]o assignment by either party of this Contract shall be valid without the written consent of the other party, which consent shall be reasonably given." *Id*.

---

[1] Appended to the Contract was "Exhibit A," which was amended on several occasions. Each version of Exhibit A listed over 500 insurance policies and the corresponding insureds for which GBS was to serve as a TPA in relation to workers' compensation claims filed against those insureds. *See* Contract, 3/19/14, at 1, Exhibit A. Pyramid was one of the insureds listed in Exhibit A, and, thus, an insured for which GBS was to provide claims handling services.

In 2001, Linnik began working as a banquet server at a hotel in the Penns Landing area of Philadelphia which was operated by Hyatt. In February 2015, Hyatt ceased to operate the hotel, and the hotel was rebranded as a Hilton hotel. Hilton was not involved in the operation or management of the hotel. Instead, commencing on February 26, 2015, Pyramid took over the operation and management of the hotel, and the employees of the hotel ceased to be employed by Hyatt and became employees of Pyramid.

Linnik worked at the hotel until March 10, 2015. Thus, although he had been employed by Hyatt for most of his employment at the hotel, he was employed by Pyramid for the last ten days of his employment and his last paycheck was issued by Pyramid. On March 18, 2015, Linnik underwent elective back surgery. Due to complications from surgery, including a fungal infection, Linnik was unable to return to work at the hotel.

On February 27, 2017, Linnik filed a worker's compensation claim petition against Hilton ("the Hilton claim"). On May 8, 2017, Linnik filed a worker's compensation claim petition against Hyatt ("the Hyatt claim"). On May 15, 2017, Linnik filed a worker's compensation claim petition against Pyramid ("the Pyramid claim").

In all three claim petitions, Linnik alleged that: he developed L3-4 and L5-S1 disc herniations in his back causing right L5 radiculopathy, requiring surgical intervention; his back injury was caused by "[c]umulative trauma sustained during the course of 14 years as a banquet server;" and the date of

his injury was March 10, 2015.  **See** The Pyramid Claim, 5/15/17, at 2; **see also** The Hilton Claim, 2/27/17, at 2; The Hyatt Claim, 5/8/17, at 2.[2]

Service of the Pyramid claim was made to Pyramid on May 17, 2017. Pyramid had twenty days from the date of service, until June 6, 2017, to file an answer.  On June 1, 2017, Provost Associates, a risk management firm engaged by Pyramid, submitted the Pyramid claim to GBS via an encrypted email.  No answer was filed on or before June 6, 2017.  Pyramid neither requested nor was granted an extension.  The workers' compensation judge ("WCJ") scheduled a hearing for June 19, 2017, at which Pyramid failed to appear.  Pyramid provided no excuse for its failure to appear.  Linnik then filed a **Yellow Freight**[3] motion against Pyramid for failure to file a timely answer.  On August 28, 2017, the WCJ granted the **Yellow Freight** motion.

---

[2] Importantly, as discussed **infra**, in each claim petition, Linnik alleged that he suffered a cumulative trauma injury.  In cases where a cumulative trauma injury is asserted, such that the claimant asserts that each day of employment constituted a new injury which further aggravated the condition, the employer at the time of the last aggravation is liable for the payment of the claimant's compensation benefits.  **See e.g., C.P. Martin Ford, Inc. v. Workers' Compensation Appeal Board (Resad Dzubur & Norristown Ford)**, 767 A.2d 1164, 1166-67 (Pa. Cmwlth. 2001).  Linnik asserted in each of his claim petitions that the date of his cumulative trauma injury was March 10, 2015, which was the last day of his employment with Pyramid.

[3] **See Yellow Freight Sys., Inc. v. Workmen's Comp, Appeal Bd.**, 423 A.2d 1125, 1127 (Pa. Cmwlth. 1981) (holding that an answer to a workers' compensation claim must be filed within twenty days after assignment to a WCJ, and that failure to do so absent an adequate excuse will result in the admission of every well-pleaded factual allegation in the claim petition and the preclusion by the employer from challenging the factual allegations in the claim petition).

As of October 13, 2017, GBS had not assigned legal counsel to represent Pyramid, and no answer had been filed in relation to the Pyramid claim. At some point after October 13, 2017, GBS assigned Malone to represent Pyramid. On October 20, 2017, even though the answer deadline had passed and a **Yellow Frieght** order had been entered against Pyramid, Malone filed an answer on behalf of Pyramid. At a hearing conducted on December 4, 2017, Malone appeared on behalf of Hilton and Pyramid.[4] Malone confirmed that Pyramid was Linnik's employer on the last day of his employment for the hotel and did not object to the dismissal of the claims against Hilton and Hyatt.

In the Pyramid claim proceedings, Linnik was deposed and testified at a hearing before the WCJ. Linnik also presented the deposition testimony of his treating neurosurgeon, Charles Munyon, M.D. Malone presented the deposition testimony and report of Armando A. Mendez, M.D., an orthopedic surgeon who conducted an independent medical exam ("IME") of Linnik. In his report, Dr. Mendez could not identify a specific trauma which could be considered the cause of Linnik's injury. Instead, Dr. Mendez concluded that Linnik's fourteen years of employment at the hotel could have caused or aggravated the disc herniation in his back:

> By way of his history, [Linnik] has had some chronic ongoing back pain since 2002[,] within a year of starting to work [at the hotel]. He did not relate to me anyone [*sic*] specific event that

---

[4] On behalf of a different insurer, GBS had separately assigned Malone to defend Hilton against the Hilton claim.

- 6 -

caused a disc herniation or acute exacerbation of his back or leg pain . . ..

. . . [Linnik] certainly had a physical job that required him to do a significant amount of lifting, bending, pushing and pulling[,] and the nature of that job could potentially been [sic] the cause of a disc herniation at the L5-S1 level. Therefore, unfortunately, I do not feel that I can, to a reasonable degree of medical certainty, give an opinion as to whether or not this injury occurred at work and is work[-]related or not. . . . Certainly[,] the type of job that he was doing could cause a disc herniation[,] and I am willing to state that from a medical perspective[,] the nature of the physical job that he had could have resulted in trauma that would have caused a disc herniation. However, I do not have any information that would lead me to conclude that he did have a specific event in the course of his job that caused the disc to herniate as a result specifically due to his work activity or duties.

Mendez Report, 12/12/17, at 7.

In March 2018, given that Pyramid was the undisputed employer on Linnik's last day of work and Dr. Mendez's report did not provide a medical defense to Linnik's cumulative trauma injury, Malone requested authorization to settle the Pyramid claim. Pyramid declined and requested reassignment of its defense to another law firm. Pyramid's request was honored, and Malone's representation was terminated. Pyramid's replacement counsel asserted that Pyramid was not Linnik's employer, and that Hyatt should be regarded as the responsible employer. However, the only evidence submitted by Pyramid in support of its defense was Linnik's 2015 W-2, which merely reflected that Linnik was employed by Hyatt at some unspecified point in 2015. Linnik, on the other hand, produced a paystub from Pyramid for the period March 1, 2015, through

March 14, 2014, which spanned his last ten days of work at the hotel and his date of injury.

On December 26, 2018, the WCJ issued a decision wherein it credited the testimony and evidence presented by Linnik, and made the following findings of fact: Linnik began working as a banquet server at the hotel in 2001; he began experiencing back pain in 2002; he began treating for his back pain in 2007; he suffered a cumulative trauma injury as a result of working as a banquet server at the hotel for fourteen years; his injury consisted of disc herniations and radiculopathy; he underwent five surgeries and spent nearly 700 days in the hospital as a result of his cumulative trauma injury; he developed a surgical wound fungal infection after the second surgery; he is recovered from his disc herniations; he is not fully recovered from the radiculopathy or the fungal infection; he cannot return to work; Pyramid issued Linnik a paycheck for the period from March 1, 2015 to March 14, 2015; Pyramid is the responsible party because it was Linnik's employer on March 10, 2015, which is the date of injury. Decision, 12/26/18, at 3-9. Pyramid appealed the WCJ's decision; however, the decision was affirmed by the Workers' Compensation Appeal Board.

Thereafter, Pyramid filed a lawsuit against GBS, asserting claims for breach of the Contract and unjust enrichment ("the **GBS** action"). Pyramid purported to bring its claims by and through its assignee, ORIC. GBS filed a third-party complaint to join Malone as a third-party defendant in the **GBS** action.

ORIC filed a lawsuit, both in its own right and as assignee of Pyramid, against Malone ("the ***Malone*** action"). Therein, ORIC asserted claims of legal malpractice based on its position that Pyramid was not Linnik's employer, that Hyatt was Linnik's employer, and that Malone should not have permitted the Hyatt claim to be dismissed. ORIC further averred that Malone's failure to file a timely answer to the Pyramid claim precluded Pyramid from challenging its status as an employer due to the ***Yellow Freight*** order.

The actions were consolidated for purposes of discovery and trial. During discovery, as related to the ***GBS*** action, Pyramid was unable to produce any evidence that GBS consented to any purported assignment by ORIC of its rights under the Contract. As related to the ***Malone*** action, ORIC submitted the untimely expert report of Daniel J. Siegel, Esquire ("the Siegel Report"), wherein he posited that, if Malone had conducted a timely and thorough investigation, Pyramid would not have been found to be the responsible party. However, the Siegel Report did not identify any new fact that Malone might have uncovered through a more thorough investigation, or explain how any party other than Pyramid was responsible for Linnik's cumulative trauma injury. Both GBS and Malone filed motions for summary judgment.

On February 13, 2023, the trial court granted both motions, and dismissed the claims against GBS and Malone with prejudice. The trial court granted GBS's motion on the basis that: Pyramid was not a party to the Contract; Pyramid was not a third-party beneficiary under the Contract because

the Contract expressly stated that it was not for the benefit of any third party; and Pyramid provided no evidence that GBS consented to any purported assignment by ORIC of its rights under the Contract. The trial court granted Malone's motion on the basis that: ORIC offered no evidence of an attorney-client relationship between it and Malone; ORIC offered no evidence that Malone had been assigned to represent Pyramid prior to the entry of the **Yellow Freight** order; and ORIC offered no evidence that Hyatt was liable for Linnik's injuries. On February 24, 2023, the trial court amended the order granting Malone's motion for summary judgment to clarify that the order encompassed both the first-party and third-party claims asserted against Malone. Pyramid and ORIC filed separate timely notices of appeal. This Court consolidated the appeals *sua sponte*. Thereafter, Pyramid and ORIC (collectively, "Appellants") filed a consolidated court-ordered Pa.R.A.P. 1925(b) statement.[5] The trial court then authored a Rule 1925(a) opinion.

Appellants filed a consolidated brief in which they raise the following issues for our review in connection with the **GBS** action:

1. Did [Pyramid] raise issues of material fact below sufficient to defeat summary judgment on whether it has presented a cognizable claim for breach of the . . . Contract?

2. As a matter of law, was [Pyramid's] unjust enrichment claim precluded by its breach of contract claim?

---

[5] The trial court noted that the Rule 1925(b) statement consists of eight pages with seventeen paragraphs and ten subparts, and that "[m]uch of the statement was inappropriate with respect to decorum or the purposes sought." Trial Court Opinion, 11/15/23, at 4 (footnote omitted).

- 10 -

Appellant's Brief at 6.

Appellants raise the following issues for our review in connection with the

***Malone*** action:

1. Was the dismissal of [the legal malpractice claim] erroneous, since [Appellants] raised disputed issues of fact sufficient to defeat summary judgment with respect to whether [Pyramid] had a viable defense in the underlying proceeding, and the failure to present that defense was a breach of the standard of care by . . . Malone?

2. As a matter of law, does the entry of a **Yellow Freight** order preclude [Appellants' legal] malpractice claims against . . . Malone . . .?

3. Should the Siegel Report have been rejected as speculative or conjectural?

4. Should . . . the Siegel Report . . . have been rejected as untimely, when it was submitted one business day late and Attorney Malone . . . did not point to any bad faith on [Appellants'] part or any resulting prejudice?

Appellants' Brief at 5 (quotation marks omitted, issues reordered).

In reviewing a grant of summary judgment, an appellate court's standard of review is *de novo* and the scope of review is plenary. **See Bourgeois v. Snow Time, Inc.**, 242 A.3d 637, 649-50 (Pa. 2020). Further, when reviewing such an order:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order

- 11 -

will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Phillips v. Lock***, 86 A.3d 906, 912-13 (citation omitted).

We initially address the issues raised by Appellants in connection with the ***GBS*** action. In their first issue, Appellants contend that the trial court erred in granting summary judgment on Pyramid's breach of contract claim against GBS. Generally, to successfully maintain a cause of action for breach of contract, the plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. ***See Albert v. Erie Ins. Exch***., 65 A.3d 923, 928 (Pa. Super. 2013).

Appellants concede that Pyramid did not sign or execute the Contract. Nevertheless, Appellants argue that Pyramid was a party to the Contract. Appellants point to the language of the Contract which permitted ORIC's insureds to negotiate fees with GBS: "[GBS] agrees to accept from the 'Insured' those fees and other charges as may be negotiated by [GBS] and the 'Insured.'" Contract 3/19/14, at 1.[6] Appellants seemingly argue that, because Pyramid, as an insured, was permitted to negotiate claims handling fees with GBS, the reference in the Contract to an insured's ability to negotiate such fees had the effect of making Pyramid a party to the Contract.

---

[6] Notably, the Contract expressly provides elsewhere that ORIC, and not any insured, was obligated to "pay [GBS] the claims fees negotiated with 'Insured.'" Contract, 3/19/14, at 8.

- 12 -

Appellants further claim that the conduct of the parties during the handling of the Pyramid claim indicates that Pyramid was a party to the Contract because: the GBS claims adjuster referred to Pyramid as "a client;" Pyramid was permitted to report its claims directly to GBS rather than to ORIC; and GBS gave Pyramid direct access to its computerized claim files. Appellants' Brief at 52. Appellants insist that, at a minimum, this conduct created an issue of fact as to whether Pyramid was a party to the Agreement.

In the alternative, Appellants contend that Pyramid was a third-party beneficiary under the Contract. Appellants concede that the Contract explicitly states that it is to be construed for the sole benefit of ORIC and GBS, and not for the benefit of any third party. Nonetheless, Appellants argue that these contractual provisions conflict with the conduct of the parties, and the provisions of the Contract which reference Pyramid's ability to negotiate fees with GBS. According to Appellants, this conflict created a genuine issue of fact as to whether the parties intended that Pyramid should be a third-party beneficiary to the Contract.[7]

As indicated above, the trial court determined that: Pyramid was not a party to the Contract; Pyramid was not a third-party beneficiary under the Contract because the Contract expressly stated that it was not for the benefit

---

[7] Appellants cite no controlling authority for their arguments and, instead, indicate that "there does not appear to be a lot of case law on the issue." Appellants' Brief at 54.

of any third party; and Pyramid provided no evidence that GBS consented to any purported assignment by ORIC of its rights under the Contract. *See* Trial Court Opinion, 11/15/23, at 16.

Viewing the record in the light most favorable to Pyramid, as the nonmoving party, and resolving all doubts as to the existence of a genuine issue of material fact against GBS, we discern no error of law or abuse of discretion by the trial court in granting GBS's motion for summary judgment on Pyramid's claim for breach of contract. In the complaint, Pyramid made clear that only *its* rights against GBS were being asserted, albeit through Pyramid's assignee, ORIC. *See* Complaint, 8/28/20, at 1-2, ¶ 4. The complaint does not purport to assert any rights held by ORIC. Notwithstanding, the *only* contract referred to in the complaint is the Contract executed between ORIC and GBS. *See id*. at ¶¶ 44-53. Indeed, the complaint expressly avers that "[t]he . . . Contract . . . creates a duty running from [GBS] to [ORIC] . . .." *Id*. at ¶ 45. Thus, the record is clear that Pyramid was not a party to the only contract identified in the claim for breach of contract.

With respect to Appellants' claim that Pyramid was a third-party beneficiary to the Contract, our Pennsylvania Supreme Court has stated:

> A party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, unless the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee

intends to give the beneficiary the benefit of the promised performance.

**_Scarpitti v. Weborg_**, 609 A.2d 147, 150-51 (Pa. 1992).

Here, the clear language of the Contract indicates that ORIC and GBS did **_not_** intend for Pyramid or any other insured to be a third-party beneficiary. Indeed, the Contract specifically provided, "[t]his Contract is for the sole benefit of the parties hereto and in no event shall Contract be constructed to be for the benefit of any third party and neither ORIC nor [GBS] shall be liable for any loss, liability damages or expense to any person not a party to this Contract." Contract, 3/19/14, at 10.

Moreover, the circumstances in this case are not so compelling that we may override the parties' clear contractual intent that Pyramid is not a third-party beneficiary to the Contract. In Pennsylvania, adjusters owe a duty of performance to their principals, the insurance companies. **_See Bleday v. OUM Grp., et al._**, 645 A.2d 1358, 1363 (Pa. Super. 1994), _appeal denied_, 655 A.2d 981 (Pa. 1995). However, this duty does not serve to create a contractual obligation between the adjusters and the insured. **_Id_**. To be sure, an adjuster cannot be liable on a contract (_i.e._, the insurance policy) to which it was not a party and never assumed. **_Id_**. Thus, although GBS owed a contractual duty to ORIC under the Contract, GBS was not a party to the insurance policy issued

by ORIC to Pyramid and, therefore, owed no contractual duty to Pyramid. *Id*.[8] That an employee of GBS may have referred to Pyramid as a client, permitted Pyramid to report claims directly to GBS, or permitted Pyramid direct access to GBS's computerized claim files does not alter the fact that GBS owed no contractual obligation to Pyramid. Accordingly, as the undisputed facts of record establish that Pyramid was neither a party to or a third-party beneficiary of the Contract, we discern no error or abuse of discretion by the trial court in granting summary judgment on Pyramid's breach of contract claim in the **GBS** action.

In Appellants' second issue in the **GBS** action, they contend that the trial court erred in dismissing Pyramid's claim for unjust enrichment. In considering this issue, we are mindful that unjust enrichment is an equitable doctrine consisting of the following elements: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *See Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. 2019).

---

[8] Notably, Pennsylvania courts permit an insured, such as Pyramid, to sue its insurer for the actions of the insurer's agents, including claims adjusters. *See, e.g., Bruno v. Erie Ins. Co.*, 106 A.3d 48, 70 (Pa. 2014). Thus, Pyramid could have sued ORIC for any perceived mishandling by GBS of the Pyramid claim. *Id*.

According to Appellants, the trial court dismissed Pyramid's claim for unjust enrichment due to the trial court's finding that Pyramid lacked standing to assert a claim for breach of contract under the Contract. Appellants assert that Pyramid asserted a claim for unjust enrichment, based on principles of equity, "for money expended by Pyramid (or [ORIC] on [Pyramid's] behalf) for the services provided by [GBS]." Appellants' Brief at 61.

In the complaint, Pyramid expressly conditioned its claim for unjust enrichment "[t]o the extent it is determined that there is **no** valid contract between [ORIC] and [GBS]." Complaint, 8/28/20, at ¶ 55 (emphasis added). Indeed, Pyramid clarified that its claim for unjust enrichment was "therefore pleaded only in the alternative." **Id**. Having determined that there **is** a valid contract between ORIC and GBS, we conclude that consideration of Pyramid's alternative theory of unjust enrichment is unnecessary.[9]

Nevertheless, on the record before us, we discern no error or abuse of discretion by the trial court in finding that Pyramid failed to raise an issue of material fact related to this claim. Pyramid has not identified any benefit that **it** conferred on GBS, any appreciation of such benefit by GBS, or any acceptance and retention of such benefits under such circumstances that it would be

_____

[9] We note that the trial court did not address Appellants' claim for unjust enrichment in its opinion, perhaps due to the claim being pleaded in the alternative. Nevertheless, we may affirm the trial court's ruling on any basis. **See In re T.P.**, 78 A.3d 1166, 1170 (Pa. Super. 2013) (holding that this Court may affirm a trial court's ruling on any valid basis appearing of record).

inequitable for GBS to retain the benefits without payment of value. *See*

***Karden Constr. Servs., Inc.***, 219 A.3d at 628. Indeed, the only benefit

identified in the complaint as being conferred on GBS was conferred by ORIC

and not Pyramid: "[ORIC] conferred a benefit on [GBS] by paying [GBS] for its

third-party administrator services on each policy, including but not limited to

for the policy held by Pyramid." Complaint, 8/28/20, at ¶ 56. Thus, as the

record is devoid of any benefit conferred on GBS by Pyramid, we discern no

error or abuse of discretion by the trial court in granting summary judgment on

Pyramid's unjust enrichment claim in the ***GBS*** action.

Given our determination that the trial court did not err or abuse its

discretion in granting summary judgment on all claims asserted against GBS in

the ***GBS*** action,[10] we now address Appellants' issues pertaining to the ***Malone***

action.

As each of Appellants' claims in the ***Malone*** action are interrelated, we

will address them together. Appellants contend that the entry of summary

judgment was improper because they raised an issue of material fact regarding

their claim for legal malpractice. In order to establish an action for legal

malpractice, an aggrieved client must demonstrate: (1) the employment of the

attorney or other basis for duty; (2) the failure of the attorney to exercise

---

[10] As no party has challenged the entry of summary judgment in favor of Malone on GBS's third-party claims against Malone in the ***GBS*** action, we need not address that ruling.

ordinary skill and knowledge; and (3) damages proximately caused by the negligence. *See Kituskie v. Corbman*, 714 A.2d 1027, 1029-30 (Pa. 1998). A legal malpractice action in Pennsylvania requires the plaintiff to prove that the attorney he hired was negligent in prosecuting or defending the underlying case. *Id*. at 1030. To prove actual injury, the appellant must demonstrate that he would have prevailed in the underlying action in the absence of the attorney's alleged negligence. *See Myers v. Robert Lewis Seigle, P.C.*, 51 A.2d 1182, 1185 (Pa. Super. 2000). Thus, in order to withstand summary judgment on their legal malpractice claim, Appellants were required to allege facts which, if proved, would establish that they would have prevailed in their underlying workers' compensation action but for Malone's negligence.

Generally, a workers' compensation claimant bears the burden of proof in a claim petition proceeding to establish the existence of a work-related injury and that the injury continues to cause disability throughout the pendency of the claim petition. *See School Dist. of Phila. v. Workers' Comp. Appeal Bd. (Hilton)*, 117 A.3d 232, 245-46 (Pa. Cmwlth. 2015). With respect to an alleged cumulative trauma injury, if an incident materially contributes to a previous work-related injury, a new injury, or "aggravation," has occurred. *McNulty v. Workers' Comp. Appeal Bd. (McNulty Tool & Die)*, 804 A.2d 1260, 1263 (Pa. Cmwlth. 2002). However, if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident, which does not contribute materially to the disability, then the claimant has

- 19 -

suffered a "recurrence." **Id**. In the "recurrence" scenario the second employer has no responsibility at all because the second event has not materially contributed to the claimant's current condition. **S. Abington Twp. v. Workers' Comp. Appeal Bd. (Becker)**, 831 A.2d 175, 182 (Pa. Cmwlth. 2003). However, in the case of an "aggravation," the second employer bears the **entire** responsibility for the claimant's recent loss of earning power despite the fact that both injuries materially contributed to his current physical condition. **Id**. If the sequence of events is not sufficient to establish whether a claimant has suffered an aggravation or a recurrence, unequivocal medical testimony is essential. **See McNulty**, 804 A.2d at 1263. Whether a disability results from an "aggravation" of a pre-existing condition or a "recurrence" of a prior injury is a question of fact to be determined by the WCJ. **See Reliable Foods, Inc. v. W.C.A.B. (Horrocks)**, 660 A.2d 162, 166 (Pa. Cmwlth. 1995).

Section 416 of the Workers' Compensation Act ("the Act")[11] requires an adverse party to file an answer to a claim petition within twenty days of service. **See** 77 P.S. § 821. Pursuant to the Act, when an employer fails, without adequate excuse, to file a timely answer to the claim petition, the employer is deemed to have admitted the factual allegations in the claim petition. **See id**.; **see also Yellow Freight**, 423 A.2d at 1127. Following the entry of a **Yellow Freight** order, the employer is barred from presenting any affirmative defenses

---

[11] **See** 77 P.S. §§ 1, *et seq*.

or challenges to the factual allegations in the claim petition, having admitted to the truth of every such factual allegation, and the claimant is not required to corroborate the allegations in his claim petition, as these allegations stand on their own as competent evidence. *See Heraeus Electro Nite Co. v. Workmen's Comp. Appeal Bd. (Ulrich)*, 697 A.2d 603, 608 (Pa. Cmwlth. 1997).

In cases where expert testimony is necessary, the expert's opinion must be made within a reasonable degree of certainty and cannot be based on conjecture or surmise. *See* Pa.R.E. 703; *see also Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 849 (Pa. Super. 2012). It is not sufficient to state that something might or could have happened:

> No matter how skilled or experienced the [expert] witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture.
>
> Moreover, expert testimony, to have any evidentiary value, must state with some positiveness that a given state of affairs is the result of a given cause. It is not enough to say that something *could* have happened. Anybody can guess. Expert testimony must assert that it is the professional opinion of the witness that the result in question came from the cause alleged.

*Smail v. Flock*, 180 A.2d 59, 61 (Pa. 1962) (emphasis in original, citation and footnote omitted); *see also Collins v. Hand*, 246 A.2d 398, 404 (Pa. 1968) (holding that, no matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture).

Appellants concede that, before Malone had been assigned to defend Pyramid, a *Yellow Freight* order had been entered and all factual assertions

in the Pyramid claim had been deemed admitted. Appellants nevertheless claim that Pyramid had a viable defense because the facts asserted in the Pyramid claim, although deemed true, were insufficient to establish that Pyramid was the responsible party. Appellants maintain that Linnik was required to submit medical evidence establishing a new injury or the material aggravation of a previous injury during the ten days he was employed by Pyramid. Appellants claim that Linnik failed to meet this burden because he presented no medical evidence to support his claim of work-related trauma injury, or any claim that his prior injury was materially aggravated during his brief time of work for Pyramid. Appellants point out that Dr. Mendez's report did not establish any new injury during Linnik's employment with Pyramid. Appellants claim that the fact that Linnik scheduled his surgery while he was still employed by Hyatt, and before he became an employee of Pyramid, permitted an inference that Linnik's injury had already occurred during the fourteen years he worked for Hyatt, and that no additional traumatic injury or material aggravation occurred during the single pay period in which he was subsequently employed by Pyramid.

Appellants maintain that Malone had "more than sufficient evidence to prove . . . that Linnik's claim was not supportable, and argue a successful defense for Pyramid." Appellants' Brief at 37 (quotation marks omitted). Appellants argue that "Malone performed little, if any, investigation and took almost no discovery with respect to the issues raised by Linnik's claim; [and] the discovery that was taken occurred after Malone conceded on the record that

Pyramid was the only potentially liable employer." *Id*. Appellants assert that "if Malone had argued the applicable Pennsylvania law (of which the [WCJ] was seemingly unaware), Linnik's failure to meet his burden, the Mendez evidence[,] and advocated for the required result, he would have succeeded on behalf of Pyramid." *Id*. at 38. Appellants assert that "Pyramid's winning case evaporated" when Malone "conceded on the record that Pyramid was the liable employer and agreed to the dismissal of Hyatt from the proceedings." *Id*. at 38-39.

Appellants further contend that the trial court should not have dismissed the Siegel report as speculative because Siegel used terminology sounding in possibility rather than certainty. Appellants concede that, in his report, Siegel stated, "[a]lthough it is not certain, in my opinion it is likely that Pyramid would not have been found to be the responsible party had . . . Malone conducted a thorough and timely investigation and presented all facts that support that finding." Appellants' Brief at 47 (quoting Siegel Report, 10/14/22, at 8-9). Appellants maintain that Siegel's use of the word "likely" was a "typographical error." *Id*.[12] Finally, Appellants contend that the Siegel report should not have been rejected by the trial court as untimely because it was one day late.

---

[12] We note with disapproval that Appellants suggest that "[Siegel] could always amend his [r]eport to correct that . . . error, should this Court regard that as a necessary step, or simply correct it in his testimony." Appellants' Brief at 47. Importantly, this Court may not consider evidence that is not included in the certified record. *See Ruspi v. Glatz*, 69 A.3d 680, 691 (Pa. Super. 2013). *(Footnote Continued Next Page)*

The trial court considered Appellants' claims regarding the **Malone** action and determined that they lacked merit. The court reasoned:

> The Siegel Report . . . speculates that, "[a]lthough it is not certain, in my opinion it is likely that Pyramid would not have been found to be the responsible party had Attorney Malone conducted a thorough and timely investigation and presented all facts that support that finding." The "facts," . . . are not presented, discussed, or otherwise made a part of the record.
>
> * * * *
>
> [Appellants] failed to offer evidence of an attorney-client relationship between Pyramid and . . . Malone . . . prior to October 2017, after sanctions, vis-a-vis the **Yellow Freight** motion, had been granted.
>
> [Appellants] failed to provide evidence of proximate cause. The only claim that ORIC could assert is that . . . Malone . . . [was] negligent in agreeing to dismiss Hyatt from the case. Pyramid, however, failed to present any evidence that Hyatt was liable. More specifically, [Appellants] failed to secure [Linnik's] medical records prior to his last day of work. [Appellants] failed to obtain [Linnik's] employment from Hyatt.

Trial Court Opinion, 11/15/23, at 15, 17 (footnote omitted).

Viewing the record in the light most favorable to Pyramid, as the nonmoving party, and resolving all doubts as to the existence of a genuine issue of material fact against Pyramid, we discern no error of law or abuse of discretion by the trial court in granting GBS's motion for summary judgment in the **Malone** action. The undisputed evidence established that Malone was not

_____

Consequently, this Court is unable to consider the evidence and testimony that Appellants, in hindsight, wish they had submitted to the trial court rather than the expert report and expert testimony that they did, in fact, submit to the trial court and which is now part of the certified record.

assigned to defend Pyramid until two months *after* the *Yellow Freight* order had been entered in the Pyramid claim. By that time, Linnik's claim that he suffered a cumulative trauma injury over his fourteen-year employment at the hotel was deemed admitted. Contrary to Appellants' assertion otherwise, Linnik was not required to corroborate the allegations in his claim petition, as such allegations stood on their own as competent evidence. *See Heraeus Electro Nite Co.*, 697 A.2d at 608. Further, Linnik had produced a paycheck from Pyramid which encompassed the last ten days of his employment at the hotel and, more importantly, his date of injury. Thus, by the time Malone was assigned to defend Pyramid, the undisputed evidence presented in the Pyramid claim proceedings established that Linnik suffered a cumulative trauma injury over the course of his employment at the hotel and that Pyramid was solely responsible for the claim because it was Linnik's employer on the date of his injury.

Moreover, the equivocal opinions provided in Dr. Mendez's report did not provide a medical defense to the Pyramid claim. While it is true that Dr. Mendez found no evidence of a traumatic injury while Linnik was employed by Pyramid, Dr. Mendez also found no evidence of a traumatic injury while Linnik was employed by Hyatt, let alone any evidence that any injury sustained during his employment by Pyramid was a mere reccurrence of an injury sustained during his employment by Hyatt. Simply put, Dr. Mendez provided no medical opinion that could be used to dispute Linnik's claim that his disc herniations constituted

a cumulative trauma injury caused by his fourteen years of banquet serving at the hotel.

Appellants reliance on the Siegel report to raise an issue of fact to defeat summary judgment in the **Malone** action is unavailing. In his report, Siegel repeatedly posits that, despite the factual and legal obstacles already in place by the time Malone was assigned to defend Pyramid, Malone should have conducted a more thorough investigation of Linnik's claim and, if he had done so, Malone would have developed a successful defense for Pyramid. **See** Siegel Report, 10/14/22, at 7-9.

However, nowhere in his report does Siegel identify any new information or evidence that: (1) exists; and (2) would have provided a viable defense for Pyramid. It is not enough to merely postulate that, had Malone conducted a more thorough investigation, there **might** have been some additional evidence, that Malone **might** have found, which **might** have been helpful to Pyramid's defense. Such speculation is wholly insufficient to create a material issue of fact to withstand summary judgment. **See Myers v. Penn Traffic Co.**, 606 A.2d 926, 930 (Pa. Super. 1992) (holding that, although the non-moving party must be given the benefit of all reasonable inferences, that party need not be given the benefit of inferences not supported by the record or of mere speculation). Moreover, if there was, in fact, other information or evidence that Malone could or should have discovered, Appellants were required to disclose that evidence in opposition to Malone's motion for summary judgment. **Id**.

However, Appellants failed to allege facts which, if proved, could establish that Pyramid would have prevailed in the Pyramid claim but for Malone's negligence. *See Myers v. Robert Lewis Seigle, P.C.*, 51 A.2d at 1185. Based on Appellants' failure to identify any issue of material fact in opposition to Malone's motion for summary judgment, we discern no error or abuse of discretion by the trial court in granting summary judgment on all claims asserted in the *Malone* action.[13]

Orders affirmed.

Judgment Entered.

*[signature: Benjamin D. Kohler]*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/01/2024

---

[13] Although Appellants argue in their final issue that the Siegel Report should not have been rejected by the trial court as untimely, Appellants fail to direct this Court to the place in the record where the trial court either deemed the report untimely or refused to consider it on this basis. *See* Pa.R.A.P. 2119(c). Moreover, in its opinion, the trial court considered the Siegel report and evaluated the opinions expressed therein as part of its summary judgment analysis. *See* Trial Court Opinion, 11/15/23, at 16-17. Thus, as there is no indication that the trial court rejected the Siegel report as untimely, we need not address this claim.