J-A07039-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| CHANNING AND CARMIN BROWN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| UNITED STATES AUTOMOBILE | : | No. 928 MDA 2025 |
| ASSOCIATION D/B/A USAA | : | |

Appeal from the Judgment Entered July 2, 2025
In the Court of Common Pleas of Berks County Civil Division at
No(s): 22 666

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:  **FILED: MAY 27, 2026**

Appellants, Channing and Carmin Brown, appeal from the judgment entered in favor of Appellee, United States Automobile Association d/b/a USAA (hereinafter "USAA"), following a non-jury trial in this statutory bad faith case.[1]  Appellants argue the trial court applied an incorrect legal standard, requiring Appellants to prove bad faith on the part of USAA through a motive of self-interest or ill-will, and improperly limited its review of the record as a result.  They ask us to vacate the trial court's decision and remand for the trial court to review the entire record under the appropriate legal standard.

Pertinent to our review, we recognize:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

---

[1] Appellants indicate they are husband and wife.  **See** Appellants' Brief at 5.

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

In ***Rancosky v. Washington Nat'l Ins. Co.***, 170 A.3d 364 (Pa. 2017), our Supreme Court explained:

> [I]n order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis. Additionally, we hold that proof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim under Section 8371…. While such evidence is probative of the second … prong, we hold that evidence of the insurer's knowledge or recklessness as to its lack of a reasonable basis in denying policy benefits is sufficient.

***Id.*** at 365.

As set forth below, we believe Appellants have not properly preserved their challenges to the trial court's decision. However, even if properly preserved, we would determine that — although the trial court initially made comments contrary to the Supreme Court's holding in ***Rancosky***, suggesting a motive of self-interest or ill-will is necessary to demonstrate bad faith — it later refined its decision, rendering a remand to the trial court for reconsideration of its decision unnecessary. Accordingly, we affirm.

## Background

The trial court summarized the background of this matter leading up to the non-jury trial as follows:

This matter arises from a motor vehicle accident occurring on October 16, 2017, in Exeter Township, Berks County, Pennsylvania…. It is alleged that the underlying tortfeasor, Victor Marrero…, failed to maintain a safe distance while traveling behind Mr. Brown's vehicle, striking him from behind at a red light. [Appellants] alleged Mr. Brown sustained multiple injuries in the accident, including: (a) post-concussion syndrome (headaches, memory loss, nausea, dizziness, and light sensitivity), (b) head pain, (c) cervicalgia, (d) back pain, (e) left and right shoulder pain, and (f) left wrist pain.

**A. The Breach Action**

At the time of the accident, [Appellants] maintained an automobile insurance policy issued by USAA, bearing Policy No. 01964 17 71U 7104 1 (the "Policy"). With liability not reasonably in dispute, after receiving USAA's timely consent, [Appellants] settled with Mr. Marrero's carrier for the $25,000 limits of third-party coverage. On August 29, 2018, [Appellants] submitted a claim to USAA for [underinsured motorist ("UIM")] benefits, demanding the full $50,000.00 limits of coverage. [Appellants'] written demand packet identified Mr. Brown's injuries with a comprehensive list of his treatment providers, as well as alleged economic damages consisting of $21,543.00 in verified lost wages, and $13,645.70 in unreimbursed medical expenses (later reduced by Pennsylvania's Act No. 6 of 1990 to $9,005.70).[2] On October 3, 2018, USAA responded with a pre-suit offer of $9,000.00.

[Appellants] wasted little time pursuing their rights. On November 20, 2018, they initiated an action against USAA in the Berks County Court of Common Pleas, setting forth claims for breach of contract (Count I) and loss of consortium (Count II). *See Brown v. USAA*, Berks Civ. Docket No. 18-19082 (the "Breach Action"). USAA continued to negotiate with [Appellants] throughout the pre-trial stage. With the assistance of counsel, USAA made subsequent offers of $10,000.00 (July 2019) and $15,000.00 (December 2020), followed by a final offer of $25,000.00 one week prior to arbitration (January 2021).

---

[2] Act No. 6 amended the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701 *et seq.* *See* Act of Feb. 7, 1990, P.L. 11, No. 6. Section 1797 of the MVFRL addresses customary charges for treatment and places billing limitations on medical providers. 75 Pa.C.S. § 1797.

[Appellants] rejected this offer and made a revised demand of $47,500.00, which USAA rejected without counter. On January 13, 2021, a panel of three arbitrators awarded [Appellants] $95,000.00. Less the $25,000.00 third-party credit, the net award to [Appellants] totaled $70,000.00, which the panel molded to the $50,000.00 policy limits — $40,000.00 to Mr. Brown on his breach claim, and $10,000.00 to Ms. Brown on her consortium claim. USAA promptly paid the award, concluding the Breach Action.

\*\*\*

**B. The Bad Faith Action**

On June 30, 2021, [Appellants] initiated this action[, which underlies the instant appeal,] in the Philadelphia Court of Common Pleas. *See Brown v. USAA*, Phila. Civ. Docket No. 210602393. [In their complaint, Appellants brought a single count for statutory bad faith pursuant to Section 8371, against USAA]. Despite having filed the Breach Action in their county of residence, [Appellants] elected to pursue bad faith in Philadelphia, which purported to have no identifiable interest in exercising its jurisdiction. USAA raised improper venue pursuant to Pa.R.C[iv].P. 1028(a)(1). On December 26, 2021, the Hon. Susan I. Schulman sustained USAA's objection and transferred the matter to Berks County, where it was assigned the within docket number (the "Bad Faith Action").

On January 15 and 16, 2025, the trial court presided over a two-day non[-]jury trial on the merits of [Appellants'] bad faith claim….

Trial Court's Pa.R.A.P. 1925(a) Opinion ("Rule 1925(a) Opinion"), 9/18/25, at 2-4 (footnotes, brackets, and some unnecessary capitalization omitted).

The trial court set forth its findings from the non-jury trial, in pertinent part, as follows. At the time of trial, Gina Castillo — the claims specialist originally assigned to value and negotiate Appellants' UIM claim — had worked for USAA for 24 years, with 12 of those years spent handling claims. Trial Court's Findings of Fact, Conclusions of Law, and Decision ("Decision"),

- 4 -

5/5/25, at ¶¶ 31-32.[3]  In that role, Ms. Castillo's principal task is to review and adjust claims before they are placed in litigation.  ***Id.*** at ¶ 34.  When evaluating Appellants' UIM claim, Ms. Castillo was aware of Mr. Brown's alleged injuries, including a closed head injury with post-concussive symptomatology and neck, back, shoulder, and wrist pain.  ***Id.*** at ¶ 35.  She also possessed a police report from the accident, records from Reading Hospital, EMT reports, documentation of primary care visits, orthopedic records, and neurologist records relating to Mr. Brown's treatment.  ***Id.*** at ¶ 36.  Ms. Castillo noted, in writing, her review of those records, and purported to credit all of Mr. Brown's claimed lost wages; however, Ms. Castillo did not credit Mr. Brown's unpaid medical bills.  ***Id.*** at ¶ 37.

After reviewing the medical records and allowing for the tortfeasor's payment Appellants had already received, Ms. Castillo valued the claim at between $9,000.00 and $17,000.00.  ***Id.*** at ¶ 38.  Ms. Castillo offered Appellants the lower amount, as she always makes her first offer at the lowest value in the range.  ***Id.*** at ¶ 39.  She also noted, when evaluating a concussion injury, memory loss and loss of work are particularly impactful in driving the value of the claim.  ***Id.*** at ¶ 40.  Ms. Castillo conveyed, when making the initial offer, she did not allow for unpaid medical bills because she believed Mr. Brown's health insurer would pay those bills.  ***Id.*** at ¶ 41.

---

[3] In the trial court's Decision, it mistakenly said Ms. Castillo's first name is Tina, instead of Gina.  ***See*** N.T., 1/15/25-1/16/25, at 18-19.

After Appellants filed their complaint in the Breach Action, the case was reassigned from Ms. Castillo to her colleague in the litigation unit, Ana Cothren. *Id.* at ¶ 42. At the time of trial, Ms. Cothren had worked for USAA for 24 years, of which she spent the last 12 years as a senior litigation manager. *Id.* at ¶ 44. At trial, Ms. Cothren did not question Mr. Brown's complaints of a concussion, indicating that this would have been noted in her file. *Id.* at ¶ 46. Although she did not have an independent recollection of her valuation in the case, based on her review of the file, she stated she gave defense counsel authority to settle the case for up to $25,000.00. *Id.* at ¶ 47. The maximum value Ms. Cothren placed on the claim prior to arbitration was $25,000.00. *Id.* at ¶ 48.

Initially, Ms. Cothren testified that her valuation was premised on her view that Mr. Brown presented with soft tissue injuries, not a concussion. *Id.* at ¶ 49. Had she viewed it as a concussion case, Ms. Cothren credibly testified she would have valued the claim at a higher amount. *Id.* at ¶ 50. However, on the second day of trial, Ms. Cothren backtracked to a degree, indicating she did originally value it as a concussion case. *Id.* at ¶ 51. Nonetheless, when shown neurologist reports from her file, Ms. Cothren stated she had not considered those records when valuing the claim. *Id.* at ¶ 52. Had she considered the neurologist records, Ms. Cothren admitted she would have valued the claim at a higher amount. *Id.* at ¶ 53.

Appellants presented the testimony of Stuart J. Setcavage, an expert on UIM claims handling and valuation. *Id.* at ¶¶ 54-55. He opined USAA's

handling of the claim did not satisfy industry standards, and USAA's valuation of the claim and settlement offers did not reasonably reflect the claim's value. *Id.* at ¶¶ 56-57. He described USAA's $10,000.00 offer as "ludicrous," indicating the offer barely covered economic damages and offered little toward non-economic damages. *Id.* at ¶ 58. He said USAA's initial $9,000.00 offer did not include unpaid medical bills and USAA's second offer of $10,000.00 was arguably a lower valuation, as it came after USAA was made aware of $4,000.00-$5,000.00 in unreimbursed medical bills. *Id.* at ¶ 59. Mr. Setcavage considered USAA's initial offers as "low[-]balling," which he said is an unethical practice. *Id.* at ¶ 60.

USAA proffered the testimony of George E. Krauss, an expert in "the standards of care applicable to insurance claims professions and good faith handling." *Id.* at ¶ 61 (citation omitted).[4] According to Mr. Krauss, the duty of good faith requires an insurer to communicate fairly with the insured, which includes telling an insured why a claim was valued in a certain way. *Id.* at ¶ 62. Although Mr. Krauss did not offer a personal valuation of the claim, he indicated USAA is not required to pay the policy limits on UIM claims when an insured makes a demand for a policy limit. *Id.* at ¶ 63. Instead, Mr. Krauss said the insurer needs to (a) follow the policy, as it is a legal contract; (b) follow state statutory regulations; and (c) adhere to financial regulations and duties. *Id.* at ¶ 64. Mr. Krauss opined USAA complied with what the law

---

[4] In the Decision, the trial court misspelled Mr. Krauss's last name as "Knauss." We call him by his correct surname. *See* N.T. at 242.

requires, and believed USAA's opening offer of $9,000.00 was prompt, reasonable, and consistent with standard practices in the insurance industry. *Id.* at ¶¶ 66-67. He disagreed USAA "forced" Appellants to litigate their UIM claim, and said an arbitration award exceeding the UIM limit is, by itself, not evidence that USAA mishandled the claim. *Id.* at ¶¶ 68-69.

Ultimately, Mr. Krauss opined, within a reasonable degree of professional certainty, that USAA properly handled the claim, evaluated the claim in a timely fashion, reasonably valued the claim, made reasonable settlement offers, complied with good faith claims practices, and handled the claim in compliance with standard industry practices. *Id.* at ¶ 70. Mr. Krauss conceded, though, offering nothing for non-economic damages on a claim would be unreasonable under the bad faith statute and could be considered in determining bad faith. *Id.* at ¶ 71. Additionally, he agreed that "if there's an unreasonable offer that forces the plaintiff to litigate the case in order to get a claim[ paid,]" it could be evidence of bad faith. *Id.* at ¶ 72 (citation omitted). However, Mr. Krauss disagreed USAA's waiting until the eve of arbitration to increase its settlement offer to $25,000.00 was in some way not good faith, and suggested the increase to $25,000.00 could be viewed as a change in USAA's valuation of litigation costs rather than a change in its valuation of damages. *Id.* at ¶¶ 73-74. Finally, when the trial court asked Mr. Krauss about the implications of an adjuster's claiming they have not received information that is already in the claims file, Mr. Krauss posited when

information that is in a file "slips through your fingers[,]" it is an accident and would not elevate to bad faith. *Id.* at ¶ 75.

On May 5, 2025, after the parties submitted findings of facts and conclusions of law and their closing arguments, the trial court entered a verdict in favor of USAA and against Appellants. In finding in favor of USAA, the trial court explained, in relevant part:

> To recover in a bad faith action against an insurer, a plaintiff must present clear and convincing evidence that: (1) the insurer did not have a reasonable basis for denying benefits under the policy; and (2) the insurer knew of or recklessly disregarded its lack of a reasonable basis. *See Rancosky*[, *supra*].
>
> Under Pennsylvania law, actions constituting bad faith are not limited solely to a denial of insurance coverage; bad faith may also include a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, failure to promptly acknowledge or act on claims, poor claims-handling, the insurer's failure to act with diligence or respond to the insured, scattershot investigation, and similar conduct. *See Ironshore Specialty Ins[.] Co[.] v. Conemaugh Health Sys[.], Inc.*, 423 F.Supp.3d 139 (W.D. Pa. 2019) (analyzing Pennsylvania substantive law, cited for persuasive value).
>
> Bad faith claims are fact-specific and depend on the conduct of the insurer vis à vis the insured; the fact finder needs to consider all the evidence available to determine whether the insurer's conduct was objective and intelligent under the circumstances. *Berg v. Nationwide Mut. Ins. Co., Inc.*, 189 A.3d 1030 (Pa. Super. [] 2018). An insurer's duty to act in good faith is an ongoing vital obligation during the entire management of a claim, and, once an insurer identifies a reasonable foundation for denying a claim, it is not relieved of its duty of good faith and fair dealing; if evidence arises that discredits the insurer's reasonable basis, the insurer's duty of good faith and fair dealing requires it to reconsider its position and act accordingly, all the while remaining committed to engage in good faith with its insured. *See Condio v. Erie Ins. Exch.*, 899 A.2d 1136 (Pa. Super. [] 2006). It is not necessary that an insurer's conduct be fraudulent, but mere negligence or bad judgment is not bad faith. [*Id.*] at

114[3]. Further, bad faith on the part of an insurer is not present merely because an insurer makes a low but reasonable estimate of an insured's losses. *See Johnson v. Progressive Ins. Co.*, 987 A.2d 781 (Pa. Super. [] 2009).

Applying these principles to the facts set forth above, it is initially apparent that USAA failed to consider all relevant information when investigating [Appellants'] claim for UIM benefits. For instance, Ms. Castillo admitted that she did not consider Mr. Brown's (relatively) sizeable medical lien when making the initial $9,000.00 offer. Although she explained that she believed his unreimbursed medical expenses would be covered by another source, Ms. Castillo did not satisfactorily explain why she did not include the reduced Act 6 amount or, if she suspected issues with recoverability, why she did not clearly document this in her file.

More significantly, however, Ms. Cothren admitted that she did not consider Mr. Brown's neurological records in her valuation, and that *she would have increased her offer had she accounted for a closed-head injury* (specifically, a concussion). The record plainly establishes that all of Mr. Brown's treatment notes were available to Ms. Cothren at the time she communicated the $25,000.00 authorization limits to counsel. In any event, her notations in the file suggest that she reviewed the documents. Although she later attempted to rehabilitate her testimony, saying in essence the exact opposite (*i.e.*, that she indeed *had* considered the concussion before communicating USAA's best and final offer), the court finds this inconsistent testimony unconvincing. Accepting as true that Ms. Cothren would have offered more had she accounted for a concussion, Mr. Brown's offer was materially lower than what USAA would have otherwise made.

The relevant question is *why* Ms. Castillo and Ms. Cothren presented offers that did not consider the full universe of Mr. Brown's injuries and economic damages. This question is highly subjective, and the court cannot infer recklessness or ill-intent from the existing record. Ms. Castillo and Ms. Cothren's failures appear to be mere oversight — conduct that, in light of the constellation of other facts set forth in the record, with the court's respective credibility determinations, suggests simple negligence rather than some nefarious or dishonest purpose. There are few if any facts that would lead to the conclusion that USAA's claim handlers acted willfully, recklessly, or with deceptive intent. They did not unduly delay authorization to settle the third-party claims; they did not unreasonably delay in investigating [Appellants']

claim or responding to [Appellants'] initial demand. They asked questions typically expected of a claim handler in a quasi-adversarial first-party file review. Further, notwithstanding [Appellants'] allegations, USAA's last and final offer of $25,000.00 (in essence, a $50,000.00 valuation on a claim with approximately $30,000.00 in documented special damages) is not so outrageously low as to be considered wholly unreasonable.

Establishing bad faith is a demanding task, requiring exacting and highly subjective scrutiny. Again, to meet their burden, [Appellants] must clearly and convincingly demonstrate that USAA's conduct imported a dishonest purpose, and that USAA breached its duty of good faith through some motive of self-interest or ill will. **See Brown v. Progressive Ins. Co.**, 860 A.2d 493 (Pa. Super. [] 2004). Put simply, the burden is high. Although [Appellants] have, to the court's satisfaction, established poor claims handling on the part of USAA's representatives, this alone is not sufficient to establish bad faith. For this reason, [Appellants'] case falls marginally short of what is needed to prevail.

**Id.** at 11-14 (unnecessary capitalization omitted; all emphasis in original).

Following the trial court's Decision, Appellants filed a timely post-trial motion pursuant to Pa.R.Civ.P. 227.1(a)(2), (4), and (5), seeking "an [o]rder granting post-trial relief, amending the court's Decision, … and granting [Appellants] judgment [notwithstanding the verdict ('JNOV')]." Appellants' Motion for Post-Trial Relief, 5/15/25, at 1.[5] In their accompanying brief, however, they stated they "move[d] pursuant to Rule 227.1(a)(2), (4)[,] and (5) … for an order amending the decision **and/or** for [J]NOV in their favor."

---

[5] We discuss Rule 227.1(a) further *infra*. Briefly, upon the filing of a post-trial motion, the trial court may direct the entry of judgment in favor of any party under Rule 227.1(a)(2); the trial court may affirm, modify, or change the decision under Rule 227.1(a)(4); and the trial court may enter any other appropriate order under Rule 227.1(a)(5).

Appellants' Brief in Support of Post-Trial Motion, 5/15/25, at 3 (emphasis added).

In Appellants' brief in support, they argued the trial court "misapplied the law and contradicted admissions and uncontested facts in the record." *Id.* at 2. Specifically, relying in part on *Rancosky*, Appellants advanced the trial court incorrectly applied controlling law, stating "[d]espite the clear authority that bad faith is more than just making a low offer, and despite the Supreme Court's admonition that 'ill[-]will' and 'self-interest' are not the proper concepts to employ, the [c]ourt's examination focused solely on whether a low offer was motivated by ill[-]will." *Id.* at 6 (citations omitted). They said the trial court's "focus on the motivations of the two adjusters, rather than the overall conduct of the company towards its insureds, led to a flawed analysis and reliance on an interpretation of the law that has been rejected by the Supreme Court." *Id.* at 4. Appellants also criticized the trial court's finding of mere oversight, arguing neither party argued mere oversight and that mere oversight "does not exist when an insurer repeatedly ignores evidence and communications that suggest that its valuation was unreasonable, fails to reconsider its valuation in light of the repeated notice, and fails to respond to direct inquiries." *Id.* at 6-7, 9. Appellants stated the trial court "created an alternate analysis that was unsupported by the evidence and contrary to what [USAA] admitted had happened. The resulting verdict is contrary to the controlling law and undisputed record evidence." *Id.* at 10 (footnote omitted); *see also id.* at 9 ("[USAA] did not argue that the

adjusters failed to notice the evidence; instead, it argued that the adjusters reasonably valued the case based on their experience.").

Appellants additionally argued the trial court "failed to address undisputed facts contrary to its findings or provide an analysis to support its decision." *Id.* at 10 (emphasis omitted). Appellants explained the trial court's "review of the record was incomplete. Missing was any consideration of the course of conduct of USAA in the underlying UIM litigation, specifically the communications between the parties." *Id.* at 10-11. They indicated the trial court failed to take into account USAA's failure to respond to Appellants' repeated requests for the basis of the denial of their claim, or why USAA delayed raising its offer until the eve of arbitration. *See id.* at 21. They also challenged the trial court's findings related to the reasonableness of USAA's offers. *Id.* at 22-24. They set forth:

> Here, there is no question, because [USAA] admits, that USAA had actual knowledge (as set forth in its claims file) that its offers were unreasonably low. Moreover, there is no question, because the undisputed facts show, that USAA disregarded the repeated signs and warnings that its offers were unreasonably low, and that despite these repeated signs and warnings, USAA disregarded its unreasonable delay in offering more than the initial … offer, its unreasonable failure to examine the file given the evidence of the low offers, and its unreasonable failure to communicate with [Appellants] about the basis for the denial of their claim.

> The [c]ourt's analysis is unsupported by reference to relevant facts and is contradicted by undisputed facts in the record. To correct this clear error, the [c]ourt should amend its decision and enter judgment for [Appellants].

*Id.* at 24.

Subsequently, USAA filed a response, arguing, *inter alia*, Appellants waived any argument for JNOV by not requesting a directed verdict during the trial and pointing out Appellants waived any request for a new trial by not requesting such relief in their post-trial motion. USAA's Brief in Opposition to Post-Trial Motion, 6/4/25, at 4. USAA argued the trial court's "holding is entirely consistent with **Rancosky**," as the trial court determined it "cannot infer **recklessness or** ill[-]intent from the existing [r]ecord." **Id.** at 9 (emphasis in original). Further, USAA emphasized the **Rancosky** Court instructed evidence of self-interest or ill-will is probative of the second prong for showing bad faith, and said the trial court appropriately applied the law to the totality of the claims handling process. **See id.** at 9, 10. USAA also insisted the trial court's findings were supported by competent evidence. **Id.** at 10-14.

Appellants thereafter filed a reply. Among other things, even though Appellants did not seek a new trial, they confusingly stated their "challenge is to the weight of the evidence. Their post-trial motion alleges that the [c]ourt misapplied the law and failed to consider evidence in [Appellants'] favor. These errors affected the [c]ourt's evaluation of the evidence…." Appellants' Reply, 6/5/25, at 1-2. Appellants also argued they moved for post-trial relief, in part, under Rule 227.1(a)(4), and said their post-trial motion "is analogous to a motion for reconsideration." **Id.** at 2-3.

Thereafter, on June 20, 2025, the trial court entered a memorandum and order denying Appellants' post-trial motion. Therein, the trial court did

not address whether Appellants waived their issues, as claimed by USAA. However, with respect to the law it applied, the trial court opined, in relevant part:

> Revisiting the applicable law, "bad faith is a frivolous or unfounded refusal to pay the proceeds of a policy done **with dishonest purpose, motivated by self-interest or ill[-]will**." **Condio**[,899 A.2d at 1142] (emphasis added…). "Mere negligence or bad judgment is not bad faith." **Id.** [at 1143]. In the absence of evidence of dishonest purpose or ill-will, it is not bad faith for an insurer to take a stand with a reasonable basis or to "aggressively investigate and protect its interests" in the normal course of litigation (and pre-suit). **Id.**; **see also Adamski v. Allstate Ins. Co.**, 738 A.2d 1033, 1036 (Pa. Super. [] 1999); **O'Donnell v. Allstate Ins. Co.**, 734 A.2d 901, 906 (Pa. Super. [] 1999) (plaintiff must prove "[defendant] knew or recklessly disregarded its lack of reasonable basis in denying the claim").

> The term "bad faith" encompasses a wide variety of objectionable conduct, and bad faith claims are inherently fact specific. **Condio**, 899 A.2d at 1142[-43]. In the first-party context, "bad faith" can mean a "lack of good faith investigation into facts, and failure to communicate with [a] claimant." **Id.**… **Condio** cites, for example, the matter of **Hollock v. Erie Ins. Exch.**, 842 A.2d 409 (Pa. Super. [] 2004), in which the insurer delayed investigation and payment, misrepresented the amount(s) of coverage, arbitrarily refused to accept medical/wage documentation, surreptitiously placed the insured under surveillance, *and* forced the insured into litigation through a "low-ball" offer bearing no rational relation to the ultimate award (an offer **29 times** lower than what the panel awarded). **See Hollock**, [**supra**]; **see also Brown**[, **supra**].

> At the heart of [Appellants'] theory is that USAA made a purposefully low initial offer and then refused to reevaluate its position despite repeated demands, resulting in unnecessary litigation and an unreasonable delay in payment of first-party benefits. It is not bad faith to make a low but reasonable estimate of the insured's losses. A $35,000.00 initial case valuation in November 2019,[2] when accounting for approximately $21,000.00 in lost wages and a medical lien that would ultimately be reduced, may be considered "low," but it is not demonstrably

unreasonable.[6]   Further, despite [Appellants'] contention that USAA refused to reevaluate its position and forced the parties to sit for arbitration, USAA did, in fact, increase its offer — *twice*. More specifically, USAA made three cascading offers of $10,000.00, $15,000.00, and $25,000.00, with the last and final offer coming immediately prior to arbitration.  This offer was (a) $22,500.00 less than [Appellants'] last demand; (b) nearly 36% of the final award (after the $25,000.00 third-party credit is applied, but before molded to the policy limits), and (c) half the available coverage.  Importantly, none of USAA's offers were so factorially incongruous with the ultimate award — certainly nothing remotely to the degree in **Hollock** — as to be considered "ludicrous."  To the extent [Appellants] or their expert believe otherwise, the [c]ourt explicitly rejects that descriptor.

> 2 USAA's initial $10,000.00 offer suggests a case valuation of $35,000.00 with the third-party credit applied.

Having addressed the reasonableness of USAA's settlement posture, the [c]ourt looked to other evidence of USAA's conduct, both pre-suit and during litigation.  Although it is true the [c]ourt ultimately concluded that it could not "infer recklessness or ill-intent from the existing [r]ecord," and that USAA's employees' missteps could be explained by "mere oversight," the [c]ourt discussed these things in the context of a larger factorial analysis, primarily because **purpose and state of mind are relevant considerations**.  **See Condio**, [**supra**;] **O'Donnell**, [**supra**;] **Terletsky**[ **v. Prudential Prop. and Cas. Ins. Co.**, 649 A.2d 680 (Pa. Super. 1994)].

The record demonstrates USAA opened the file promptly and began its investigation while providing [Appellants] consent to settle the third-party claims.  USAA did not unreasonably delay in responding to [Appellants'] initial policy limits demand — after receiving the demand packet, USAA timely responded with an offer and remained in contact while investigating [Appellants'] economic claims and medical treatment.  Throughout this litigation, USAA continued to negotiate, with the advice and

---

6 The trial court later observed, "[i]n its analysis in the Post-Trial [M]emorandum, the [t]rial [c]ourt misstated the amount of the initial offer as $10,000.00.  In fact, USAA's first offer was $9,000.00."  Rule 1925(a) Opinion at 2 n.1 (citation omitted).  However, the trial court did not indicate this misstatement changed its analysis at all.

assistance of counsel, until the eve of arbitration. Then, after receiving notice of the award, USAA paid the molded award promptly.

Beyond mere insinuation, [Appellants] point to nothing in the record demonstrating an intention on the part of USAA to defraud [Appellants] or knowingly undermine the value of their claim. Absent from the record is *any* evidence that USAA's employees acted with purpose, frivolity, recklessness, or even knowledge of their allegedly improper conduct. Unlike **Hollock** and other cases where bad faith was proven, USAA did not misrepresent the limits of coverage or terms of payment; it did not place the insured under surveillance; it did not make unreasonable demands of [Appellants]; it did not pursue frivolous investigatory paths; and it did not arbitrarily question or reject [Appellants'] medical and/or wage loss documentation, much less without reasonable basis.

At risk of repetition, the [c]ourt agrees that USAA's claim handlers arguably conducted their investigation and initial negotiations in a less-than-ideal manner. (It could be equally true that USAA's employees were simply ill-prepared to testify on the day of [t]rial, or that they could not recall certain factual details about their investigation and evaluation many years later.) Whatever the case, whether that conduct is charitably categorized as inattentiveness, neglect, incompetence, forgetfulness, or "mere oversight," none constitutes statutory bad faith on the sum of the facts presented with any degree of scrutiny applied.

Trial Court's Post-Trial Memorandum and Order ("Post-Trial Memorandum"), 6/20/25, at 2-5 (all emphasis in original).

After the trial court denied Appellants' post-trial motion, USAA filed a praecipe for entry of judgment, and judgment was entered in its favor on July 2, 2025. Appellants filed a timely notice of appeal on July 10, 2025. The trial court directed Appellants to file a Pa.R.A.P. 1925(b) concise statement. Appellants timely filed their concise statement, and the trial court subsequently filed a Rule 1925(a) opinion.

- 17 -

In the trial court's Rule 1925(a) opinion, the trial court suggested we find Appellants' appellate issues waived due to Appellants' lengthy, redundant, and unclear concise statement. Nevertheless, it went on to address Appellants' most significant issue that the trial court misinterpreted and/or misapplied **Rancosky**. The trial court explained:

The trial court rendered its decision *in light* of **Rancosky**, not *in spite* of it. It is the first case referenced in the trial court's discussion of controlling authority [in its Decision], demonstrating its significance to the trial court's analysis. **See** Decision[ at] 11. More importantly, without qualification, the trial court heeded **Rancosky** in considering whether USAA (1) lacked a reasonable basis for its offer(s), and, if so, whether USAA (2) either knew or recklessly disregarded its lack of a reasonable basis. **See Rancosky**, 170 A.3d at 365…. This is clear when reviewing the entirety of the trial court's analysis.

In framing their complaint in this way, [Appellants] argue in essence that no further evidentiary showing is needed beyond Ms. Cothren's testimony that (a) she neglected to consider medical records documenting Mr. Brown's closed head injury (which the trial court determined she possessed), and (b) had she done so, she likely would have evaluated [Appellants'] claims differently. Even if true, [Appellants] do not prevail on this testimony alone. Although this may go to the reasonableness of Ms. Cothren's post-suit offer(s), it does not obviate the need for further inquiry. This is particularly true because the trial court expressly determined that Ms. Cothren's failure to consider evidence of Mr. Brown's concussion appeared to be [the] result of "mere oversight … suggest[ing] *simple negligence*."[10] **See** Decision[ at] 13. **See** [*also*] **Condio**[, *supra*] ([stating] mere negligence or bad judgment does not constitute bad faith).

[10] The trial court found the same was true of the initial file review by [Ms. Castillo]. **See** Decision[ at] 13. The trial court determined that Ms. Castillo had not initially allowed for unpaid medical bills because she believed they would be reimbursed by insurance. **Id.** at 6. These expenses were not reimbursed in full, though they were later substantially reduced by Act 6. In recognizing Ms. Castillo's "failure to satisfactorily explain why she did not include the reduced

Act 6 amount or, if she suspected issues with recoverability, why she did not clearly document this in her file," *see* [*id.* at ]12, the trial court noted:

> The trial court agrees that Ms. Castillo and Ms. Cothren arguably conducted their investigations and initial negotiations in a less-than-ideal manner. (It could be equally true that Ms. Castrillo [*sic*] and/or Ms. Cothren were simply ill-prepared to testify on the day of trial, or that they could recall certain factual details about their investigation and evaluation many years later.) Whatever the case, ***whether that conduct is charitably categorized as inattentiveness, neglect, incompetence, forgetfulness, or 'mere oversight,' none constitutes statutory bad faith on the sum of the facts presented with any degree of scrutiny applied.***

[Post-Trial Memorandum at] 4-5 (emphasis added)….

Absent actual knowledge, an insurer may nevertheless act with bad faith by conducting its claims handling/review in a reckless manner, with conscious disregard for the rights of its insured. "Recklessness" cannot be demonstrated without regard for circumstance, however. It is expressly distinguishable from negligence on the basis that recklessness requires conscious action or inaction, whereas negligence suggests unconscious inadvertence. ***See Fitsko v. Gaughenbaugh***, 69 A.2d 76 (Pa. 1949) (citing with approval the Restatement (First) or Torts definition of "reckless disregard" and its explanation of the distinction between ordinary negligence and recklessness). It involves a higher degree of fault, with purpose or conscious disregard for a known risk or harm. Failure, then, to consider the full universe of an insurer's conduct would be in error. To be sure, a bad faith inquiry is a highly fact specific undertaking. ***See Berg***[, ***supra***].

It is against this backdrop that the trial court explored evidence of USAA's overall conduct — both pre-suit and during litigation — pursuant to the second prong of ***Rancosky***, which focuses on an insurer's state of mind. Notwithstanding [Appellants'] interpretation of the [trial court's] Decision and/or Post-Trial [Memorandum], the trial court was not "searching for evidence of dishonest purpose, self-interest, or ill[-]will" alone, nor was this

standard applied. Rather, the trial court considered the full constellation of facts in search of *any* evidence tending to demonstrate that USAA knew or should have known it was undervaluing [Appellants'] claim and making an unreasonable offer.[11]

> [11] It must be noted that the trial court never concluded that any offer by USAA was *per se* unreasonable. Ms. Castillo's $9,000.00 pre-suit offer implied a low[-]range case valuation of $34,000.00 against alleged economic damages totaling $30,548.00 (assuming medical expenses at their Act 6 reduced rate). This "may be considered [`]low,['] but it is not demonstrably unreasonable." **See** Post-Trial [Memorandum at] 3. It is not bad faith for an insurer to make a low but reasonable estimate of an insured's losses. **See Johnson**[, **supra**]. The strongest evidence of the issue is Ms. Cothren's testimony that she would have offered more **post-suit** (with other litigation considerations involved) had she evaluated the claim in a different light. [Appellants] failed to demonstrate that a "reasonable" insurer would have otherwise offered more at relevant times in an arbitration-level proceeding with mostly soft tissue injuries and a healthy third-party credit. It may be [Appellants'] belief that the initial offer was "ludicrous," or that USAA's best offer afforded "nothing" for noneconomic damages, but the trial court does not agree. Whatever the case, the trial court will not subordinate its judgment to [Appellants' judgment].

Most importantly, the allegation that the trial court simply disregarded evidence of "actual knowledge or reckless disregard," or simply ignored evidence relevant to the question of recklessness is untrue. The trial court specifically determined that [Appellants] failed to produce evidence of either intentionality **or recklessness** — certainly not sufficiently to meet [Appellants'] demanding clear and convincing burden. **See** Decision[ at] 13 ("[T]here are few if any facts that would lead to the conclusion that USAA's claims handlers acted willfully, **recklessly**, or with deceptive intent[."]); **see also** Post-Trial [Memorandum at] 5 ("[A]bsent from the [r]ecord is any evidence that USAA's employees acted with purpose, frivolity, **recklessness, or even knowledge of their allegedly improper conduct**[.]").

More broadly, the trial court's discussion of intentionality, purpose, motivation, ill-will, recklessness, and other similar

concepts is in full harmony with *Rancosky*. This is true because the Supreme Court explicitly held that such evidence ("motive of self-interest or ill-will"), although not required for a bad faith showing, is "***probative of the second prong***...." *Rancosky*, 170 A.3d at 377. Where, as here, there is a paucity of direct and compelling evidence of bad faith conduct (*e.g.*, communications between employees or notations in the claims file evidencing purposeful conduct; refusal to accept or consider records without a good faith reason; delayed responses or lapses in time following communications from counsel; surreptitious surveillance of [Appellants]; unnecessary demands or excuses for the insurer's delays; misrepresentation of the limits or conditions of coverage, etc.), the trial court leaves no stone unturned in review of *Rancosky's* second prong. [Appellants'] complaint that the trial court went beyond what is envisioned or permitted by *Rancosky* is without merit.

Lastly, notwithstanding [Appellants'] assertion, the trial court did not rely on dicta from a disfavored line of cases. To the contrary, it relied on a well-developed body of law analyzing specific conduct constituting bad faith, which is particularly useful in actions such as this. *See, e.g.*, *Terletsky*[, *supra*]; *Condio*[, *supra*]; *Hollock*[, *supra*]; *Brown*[, *supra*]. *Rancosky* very narrowly addressed whether evidence of motive of self-interest or ill-will is necessary — it did not overrule this line of cases in whole, and the trial court is reasonably permitted to consider and analogize the holdings of these respective appellate decisions (most certainly in a manner consistent with *Rancosky's* holding). The trial court never said that dishonest purpose, self-interest, or ill[-]will was required. It did not apply a new or inconsistent standard of test. The trial court provided substantial further analysis on the subject in its Post-Trial [Memorandum], yet [Appellants] persist in the myth that the trial court simply ignored *Rancosky* and evidence of USAA's conduct.

\*\*\*

The trial court undertook a thorough review of the record when making its decision. The trial court faithfully cited and applied the appropriate legal standard, and the trial court's factual findings supporting that conclusion are entitled to great deference. [Appellants] point to nothing within the record so compelling as to warrant reversing the trial court's carefully considered Decision on the merits. Even if [Appellants] were to establish that the trial court somehow misread or misapplied *Rancosky* warranting

remand, nothing would change the outcome on the existing evidentiary record.

Rule 1925(a) Opinion at 9-13, 14 (unnecessary capitalization, some footnotes and brackets omitted; all emphasis in original).

## Issues

On appeal, Appellants present two questions for our review:

1. Should the Court deny the trial court's suggestion to find waiver where [Appellants'] statement of errors, while lengthy, was not filed in bad faith and does not impede appellate review?

2. Should the Court remand this case to the trial court for reconsideration of its Decision where the trial court applied an incorrect legal standard, requiring [Appellants] to prove bad faith through some motive of self-interest or ill[-]will, and misapplied controlling law, limiting its review of the record to consideration of why the individual adjusters' valuations were low, rather than considering the entire course of [USAA's] conduct?

Appellants' Brief at 4 (unnecessary capitalization omitted).

## Analysis

### *Rule 1925(b)*

In Appellants' first issue, they argue we should deny the trial court's suggestion of waiver based on their allegedly non-compliant Rule 1925(b) concise statement. *See* Appellants' Brief at 26. Although they admit their concise statement was unnecessarily lengthy, Appellants insist it was not filed in bad faith and does not impede appellate review. *Id.* at 21, 25, 26. Appellants claim the concise statement "was organized in a way intended to focus the [t]rial [c]ourt's attention on the specific law and evidence pertinent to each error, not to overwhelm the [t]rial [c]ourt." *Id.* at 21.

"The fact [the appellant] filed a timely [Rule] 1925(b) statement does not automatically equate with issue preservation." ***Commonwealth v. Vurimindi***, 200 A.3d 1031, 1038 (Pa. Super. 2018) (citation omitted). "[T]he [Rule] 1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith." ***Id.*** Our Rules of Appellate Procedure instruct the concise statement "shall set forth only those errors that the appellant intends to assert" and "shall concisely identify each error … with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(i)-(ii). Further, the Rules direct the concise statement "should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(iv). It is well-established issues not raised in accordance with the provisions of Rule 1925(b)(4) are waived. Pa.R.A.P. 1925(b)(4)(vii).

Appellants' concise statement is fifteen pages long. ***See generally*** Pa.R.A.P. 1925(b) Statement, 7/22/25. The first seven pages consist of an "Introduction" section, in which Appellants apologized to the trial court for their tone and comments in their post-trial motion briefing, set forth the governing law, discussed evidence introduced at trial, addressed the parties' respective positions and arguments, and claimed the trial court misapplied the applicable law and therefore erroneously examined the evidence. ***See id.*** at

1-7. The remaining eight pages include a list of ten paragraphs, stating the ways in which the trial court purportedly erred. *Id.* at 8-15. Appellants explain the first sentence of each of the ten paragraphs sets forth the alleged error and is followed by a discussion to clarify the basis for the error. *See id.*; Appellants' Brief at 22.

Upon review, the trial court said Appellants "do not present their appellate issues in an easily identifiable manner, and many/most issues appear to be related if not strictly redundant." Rule 1925(a) Opinion at 7. The trial court stated "[i]t is not clear whether they explicitly raise an issue with weight or sufficiency…, or if their argument is principally rooted in the [t]rial [c]ourt's alleged legal errors." *Id.* It opined Appellants "have frustrated the [t]rial [c]ourt's attempt to identify issues, as [Appellants] present not so much a clear statement of legal error or discretionary abuse as much as a wandering skein of grievances." *Id.* at 8. It also complained Appellants "pick and choose portions of the Decision and Post-Trial [Memorandum] they find offensive, while ignoring the larger mosaic, and the [t]rial [c]ourt's every word [is] met with seemingly endless dissection and contortion." *Id.* at 7. Among other things, the trial court said Appellants "(a) isolate words, phrases, and sentences without regard for context, (b) conflate controlling legal concepts, (c) suggest findings and conclusions other than what the [t]rial [c]ourt expressly determined, and (d) even misstate facts within the [r]ecord." *Id.* As set forth above, while the trial court submitted waiver is an appropriate remedy, it nevertheless went on to perceive and address Appellants' most

- 24 -

significant issue — whether it misapplied **Rancosky**, which forms the basis of Appellants' second issue on appeal. **Id.** at 8-14.

We admonish Appellants for their lack of compliance with Rule 1925(b). We agree with the trial court that Appellants' concise statement is needlessly long, repetitive, confusing, and convoluted, especially given that this case involved a single claim made against a single defendant.[7] However, the trial court was ultimately able to discern and address the error Appellants raise on appeal. As the trial court recognized, this error connects to many of the other issues Appellants raised in the concise statement. **See** Rule 1925(a) Opinion at 7, 8-9. Further, Appellants insist the concise statement was not filed in bad faith but rather was meant to clarify the alleged errors. Appellants' Brief at 25-26.[8] While this attempt fell short, in this instance, we decline to find waiver of Appellants' second issue based on their Rule 1925(b) statement.

---

[7] **Cf. Eiser v. Brown & Williamson Tobacco Corp.**, 938 A.2d 417, 427 (Pa. 2007) (declining to find waiver based on the large number of issues raised in the concise statement where the appellants "brought forth a complicated multi-count lawsuit with numerous defendants resulting in many trial court rulings").

[8] **Cf. Vurimindi**, 200 A.3d at 1042 (finding waiver where Rule 1925(b) statement was 53 pages long and consisted of a "defamatory rant against everything and everyone involved in [the] case[, which] shows complete defiance toward the purpose of appellate review"); **Jiricko v. Geico Ins. Co.**, 947 A.2d 206, 213 (Pa. Super. 2008) (finding waiver where the appellant's concise statement was five pages long and, crucially, "[t]here is simply no legitimate appellate issue presented" therein); **Kanter v. Epstein**, 866 A.2d 394, 402 (Pa. Super. 2004) (finding waiver where the defendants raised a total of 104 issues in their concise statements and "attempted to overwhelm the trial court by filing Rule 1925(b) [s]tatements that contained a multitude
*(Footnote Continued Next Page)*

### *Request for Remand*

In Appellants' second issue, they argue the trial court applied an incorrect legal standard that tainted and limited its review of the record. Appellants' Brief at 27.  In contravention of *Rancosky*, Appellants claim the trial court incorrectly determined establishing bad faith requires a finding of USAA's motive of self-interest or ill-will.  *See id.* at 32-33.  In addition, Appellants say the trial court "failed to consider evidence of bad faith other than the low valuation by the adjusters.  For example, [Appellants] asserted bad faith claims based on unreasonable delay, failure to investigate[,] and failure to communicate the basis for the denial." *Id.* at 33 (citation omitted). Appellants advance the trial court "erred in not giving appropriate weight to evidence of bad faith conduct other than low offers[,]" and "focused only on the conduct and motivations of the two individual adjusters." *Id.*  Ultimately, Appellants insist the trial court's "application of a clearly erroneous legal standard warrants remand for a new decision, where the evaluation of the entire record may be undertaken in compliance with controlling law." *Id.* at 35.

---

of issues that the [d]efendants did not intend to raise and/or could not raise before this Court").

Before addressing Appellants' arguments, we highlight Appellants purport they are not seeking JNOV or a new trial.[9] Nevertheless, we observe — with respect to JNOV —"[t]here are two bases upon which a court may enter [JNOV]:(1) the movant is entitled to judgment as a matter of law, or (2), the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Quinby v. Plumsteadville Family Practice, Inc.***, 907 A.2d 1061, 1074 (Pa. 2006) (cleaned up). "With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in their favor;" while, "with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." ***Id.*** (citation omitted). In reviewing a motion for JNOV, "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." ***Id.*** (citation omitted).

On the other hand, a new trial is the remedy where the verdict is alleged to be against the weight of the evidence. ***Lanning v. West***, 803 A.2d 753,

---

[9] Appellants say, "[b]y this appeal, [they] challenge only the [t]rial [c]ourt's denial of their request to amend its Decision, which request was made pursuant to Rule 227.1(a)(4) and (5)." Appellants' Reply Brief at 5. Although Appellants also requested JNOV pursuant to Rule 227.1(a)(2) below, they clarify they "do not ask this Court to enter judgment in their favor." Appellants' Reply Brief at 4 n.2; ***see also id.*** at 4 (stating Appellants "do not appeal the denial of JNOV or ask this Court to enter judgment in their favor").

766 (Pa. Super. 2002). "A true weight-of-the-evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006) (citation omitted). "The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court[,]" and "the function of an appellate court … is to review the trial court's exercise of discretion based upon a review of the record…." *Heffelfinger v. Shen*, 342 A.3d 711, 725 (Pa. Super. 2025) (citation omitted). "[I]n reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice." *Id.* "A verdict is against the weight of the evidence where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.*

Instead of seeking JNOV or a new trial, Appellants ask us to vacate the trial court's decision, remand the case, and direct the trial court to review the existing record under the correct legal standard. *See* Appellants' Reply Brief at 5. They claim they preserved this issue by moving for post-trial relief, in part, pursuant to Rule 227.1(a)(4) and (5). *See id.* at 4.

Rule 227.1(a) provides the following:

(a) After trial and upon the written Motion for Post-Trial relief filed by any party, the court may

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) affirm, modify or change the decision; or

(5) enter any other appropriate order.

Pa.R.Civ.P. 227.1(a).

We recognize "Rule 227 expressly provides a trial court with broad authority in addressing post-trial motions. [A] court may 'modify or change' its decision [under Rule 227.1(a)(4)] without qualification as to the significance of the change." ***Gruca v. Clearbrook Cmty. Servs. Assoc., Inc.***, 286 A.3d 1273, 1278 (Pa. Super. 2022) (emphasis and citation omitted); ***see also*** Pa.R.Civ.P. 227.1 cmt. (noting "the underlying purpose of [Rule 227.1] is to allow the trial court to reconsider its determination and make any corrections before it is appealed"); ***Claudio v. Dean Machine Co.***, 831 A.2d 140, 145 (Pa. 2003) (observing the purpose of Rule 227.1 "is to provide the trial court with an opportunity to review and reconsider its earlier rulings and correct its own error") (emphasis and citations omitted).

Despite this broad authority, however, we express our concerns that Appellants seek relief under the guise of Rule 227.1(a)(4) and (5), when they should have properly requested JNOV and/or a new trial. While Appellants' post-trial filings are not a model of clarity, in our view, Appellants asked for the trial court below to enter judgment in their favor based on the applicable law and the uncontested facts in their post-trial motion, which sounds in

JNOV.[10]  To us, they seemed to argue no two reasonable minds could disagree the outcome should have been rendered in their favor under the applicable law.  **See Quinby**, 907 A.2d at 1074.  However, "to preserve the right to request a JNOV post-trial, a litigant must first request a binding charge to the jury or move for a directed verdict or a compulsory non-suit at trial."  **Jones v. Foods on First III, Inc.**, 345 A.3d 231, 246-47 (Pa. Super. 2025) (citations and emphasis omitted).[11]  Problematically, Appellants did not move for a directed verdict at the non-jury trial, resulting in waiver of their right to JNOV.[12]

_____

[10] **See, e.g.**, Appellants' Brief in Support of Post-Trial Motion at 2 ("The [c]ourt misapplied the law and contradicted admissions and uncontested facts in the record."); **id.** ("The Rules permit a [c]ourt to amend its decision.  The admissions and uncontested facts in the record require it in this case."); **id.** at 9 ("[USAA's] closing argument was, in effect, a deliberate concession that examining its conduct during the UIM litigation would result in a finding of bad faith."); **id.** at 10 ("The resulting verdict is contrary to the controlling law and the undisputed record evidence."); **id.** at 21 ("None of the facts cited by the [c]ourt would excuse USAA from failing to respond to [Appellants'] repeated requests for the basis for the denial of the claim…."); **id.** at 24 ("[T]he court's analysis is unsupported by reference to the relevant facts and is contradicted by undisputed facts in the record.").

[11] **See Rogers v. Thomas**, 291 A.3d 865, 882-83 (Pa. Super. 2023) (*en banc*) ("A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff's evidence and is made at the close of the plaintiff's case.  A motion for directed verdict, like a motion seeking [JNOV], requires a court to test the sufficiency of all evidence at the close of a case.") (cleaned up).

[12] In **Jones**, we noted "this Court has overlooked waiver [based on a failure to preserve a right to JNOV at trial] in instances where the trial court disposed of a post-trial motion on the merits or declined to find waiver."  **Jones**, 345 A.2d at 247 (citing **Bank of America, N.A. v. Scott**, 271 A.3d 897 (Pa. Super. *(Footnote Continued Next Page)*

Moreover, to the extent Appellants contested the trial court's factual findings and indicated in their reply brief below they were challenging the weight of the evidence, Appellant should have requested a new trial in their post-trial motion, which they failed to do, waiving that issue as well. **See id.** at 246 (recognizing Rule 227.1 "requires parties to file post-trial motions in order to preserve issues for appeal[,]" and "[i]f an issue has not been raised in a post-trial motion, it is waived for appeal purposes") (citation omitted).

In any event, upon review of Appellant's request for the trial court to reconsider the record under the correct legal standard pursuant to Rule 227.1(a)(4) and (5), no relief is warranted.[13]  At the outset, we agree with Appellants the trial court made comments at times in its Decision, and Post-Trial Memorandum, suggesting proof of a motive of self-interest or ill-will is required, which contravenes our Supreme Court's holding in **Rancosky**.  **See** Decision at 14 ("[T]o meet their burden, [Appellants] must clearly and

_____

2022); **Karden Const. Servs., Inc. v. D'Amico**, 219 A.3d 619 (Pa. Super. 2019)).  However, we pointed out "[t]hose cases … and the authority they rely upon, do not stand for the proposition that we are **precluded** from finding waiver in similar circumstances." **Id.** (emphasis in original). **Accord Munoz v. Children's Hosp. of Phila.**, No. 1388 EDA 2024, unpublished memorandum at 17 n.13 (Pa. Super. filed May 27, 2025) (declining to overlook grounds for waiver of JNOV even though the trial court addressed the claim in its Rule 1925(a) opinion); **see also** Pa.R.A.P. 126(b) (providing unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[13] "Whether an incorrect legal standard was applied is a question of law, and thus our standard of review is de novo." **C.G. v. J.H.**, 172 A.3d 43, 52 (Pa. Super. 2017) (citation omitted).

convincingly demonstrate that USAA's conduct imported a dishonest purpose, and that USAA breached its duty of good faith through some motive of self-interest or ill will.") (citation omitted); Post-Trial Memorandum at 2 (stating "bad faith is a frivolous or unfounded refusal to pay the proceeds of a policy done **with dishonest purpose, motivated by self-interest or ill-will**") (emphasis in original; citations omitted).

Yet, in its Rule 1925(a) opinion, the trial court unambiguously heeded the two-prong test set forth in **Rancosky**. With respect to the first prong, it stated it did not find any offer by USAA to be *per se* unreasonable. Rule 1925(a) Opinion at 11 n.11. Significantly, even if the offers were unreasonable, regarding the second prong, the trial court determined Appellants "failed to produce evidence of either intentionality or recklessness — certainly not sufficiently to meet [Appellants'] demanding clear and convincing burden." **Id.** at 12 (emphasis omitted). The trial court emphasized it found Ms. Cothren's failure to consider evidence of Mr. Brown's concussion, and Ms. Castillo's failure to allow for unpaid medical bills, to be simple negligence. **See id.** at 10. It asserted, "even if [Appellants] were able to establish that the [t]rial [c]ourt somehow misread or misapplied **Rancosky** warranting remand, nothing would change the outcome on the existing evidentiary record." **Id.** at 14.

The trial court's Rule 1925(a) opinion clarifies any doubt as to whether it applied **Rancosky**. Given the trial court's Rule 1925(a) opinion, we see no reason to vacate its decision and remand for it to reconsider the existing

record under ***Rancosky***; the trial court has clearly already done so. Further, to the extent Appellants argue the trial court also failed to apply controlling law by not considering evidence of bad faith other than the low valuations by the adjusters, the record belies this claim.[14] Finally, insofar as Appellants attack the trial court's factual findings and how it weighed the evidence, Appellants did not present these issues in their statement of questions involved, did not clearly raise a claim to JNOV or a new trial in their Rule 1925(b) statement, did not properly preserve their requests for JNOV or a new trial below, and insist they are not seeking JNOV or a new trial on appeal.

---

[14] The trial court considered USAA's conduct beyond just its adjusters' valuations. ***See*** Decision at 11 (observing actions of bad faith are not limited solely to a denial of insurance coverage); ***id.*** at 13 (considering USAA did not unduly delay authorization to settle third-party claims, did not unreasonably delay in investigating Appellants' claim or responding to their initial demand, and asked questions typically expected of a claim handler in a quasi-adversarial first-party file review); Post-Trial Memorandum at 2 (recognizing bad faith encompasses a wide variety of objectionable conduct, including a lack of good faith investigation into facts and failure to communicate with a claimant); ***id.*** at 3 (stating "despite [Appellants'] contention that USAA refused to reevaluate its position and forced the parties to sit for arbitration, USAA did, in fact, increase its offer — *twice*") (emphasis in original); ***id.*** at 4 ("USAA opened the file promptly and began its investigation while providing [Appellants] consent to settle the third-party claim. USAA did not unreasonably delay in responding to [Appellants'] initial policy limits demand — after receiving the demand packet, USAA timely responded with an offer and remained in contact while investigating [Appellants'] economic claims and medical treatment. Through this litigation, USAA continued to negotiate, with the advice and assistance of counsel, until the eve of arbitration. Then, after receiving notice of the award, USAA paid the molded award promptly.").

Thus, we deem these arguments waived.[15]  Accordingly, we affirm the trial court's judgment in favor of USAA.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/27/2026

---

[15] **See** Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved….  No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); pages 22-25, **supra** (discussing Appellants' Rule 1925(b) statement); pages 29-31, **supra** (addressing Appellants' failure to properly preserve request for JNOV or a new trial); footnote 9, **supra** (explaining Appellants do not seek JNOV or a new trial on appeal); **see also** Appellants' Brief at 35-39, 42-45, 45-46 (challenging the trial court's factual finding the adjusters' failures were mere oversights, the trial court's determinations regarding the reasonableness of USAA's offers, and the trial court's purported failure to consider USAA's lack of investigation and communication with Appellants).